UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF NEW YORK

JEFF M. OWEN,                      .    Docket No.
                                   .    1:21-cv-06176-DG-RML
        Plaintiff,                 .
                                   .
            v.                     .    Brooklyn, New York
                                   .    Wednesday, July 13, 2022
RECONNAISSANCE ENERGY              .    3:00 p.m.
AFRICA LTD, RECONNAISSANCE         .
ENERGY AFRICA LTD., ET             .
AL.,                               .
                                   .
        Defendants.                .
    . . . . . . . . . . . . . .

TRANSCRIPT OF PRE-MOTION CONFERENCE
BEFORE THE HONORABLE DIANE GUJARATI
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          Glancy Prongay & Murray LLP
                            GARTH AVERY SPENCER, ESQ.
                            EX KANO S. SAMS, II, ESQ.
                            1925 Century Park East
                            Suite 2100
                            Los Angeles, California 90067
                            310-201-9150

For the Defendants:         Neal Gerber & Eisenberg LLP
                            SCOTT J. FISHER, ESQ.
                            Two North LaSalle Street
                            Suite 1700
                            Chicago, Illinois 60602
                            312-269-8000

For the Defendants:         Pryor Cashman LLP
                            JEFFREY EHRLICH ALBERTS, ESQ.
                            7 Times Square
                            40th Floor
                            New York, New York 10036
                            212-326-0800

Transcription Service:          Superior Reporting Services LLC
                                P.O. Box 5032
                                Maryville, TN 37802
                                865-344-3150


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

Superior Reporting LLC
P.O. Box 5032 Maryville, TN 37802
transcripts@superiorreporter.com

P R O C E E D I N G S

THE CLERK:  Civil call for pre-motion conference and Docket #21-cv-6176, Owen versus Reconnaissance Energy Africa Limited, et al.  Before asking the parties to state their appearances, I would like to note the following.

Persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in sanctions, including removal of court-issued media credentials, restricted entry to future hearings, denial of entry to future hearings or any other sanctions deemed necessary by the court.

Counsel, please state your presence for the record, starting with the plaintiff.

MR. SPENCER:  Good afternoon, Your Honor.  This is Garth Spencer from Glancy, Prongay and Murray on behalf of lead Plaintiff Robert Partovy, and with me today is my colleague and partner, Ex Kano Sams.

MR. SAMS:  Good afternoon, Your Honor.

THE COURT:  Good afternoon to you both.

MR. ALBERTS:  And on behalf of defendants, this is Jeffrey Alberts of Pryor Cashman, LLP, and I'd like to introduce the Court to Scott Fisher of Neal, Gerber, and Eisenberg whose motion to appear pro hac vice was granted in

March of this year.  Good afternoon, Your Honor.

THE COURT:  Good afternoon to you both.

MR. FISHER:  Good afternoon.

THE COURT:  We're convened this afternoon in connection with the defendants' anticipated motion to dismiss.  I have, of course, read the pre-motion letters, but I'd like to hear the parties out a bit more on both, you know, the anticipated motion and the response to the same. And I have some specific questions, but I will first open it up to you, Mr. Alberts, for anything you'd like to tell me about your anticipated motion.

MR. ALBERTS:  Your Honor, Mr. Fisher will be speaking on behalf of defendants with regard to the motion.

THE COURT:  Okay.  Thank you.  Go ahead, Mr. Fisher.

MR. FISHER:  Good afternoon, Your Honor.  The crux of the claim is that ReconAfrica did not disclose to investors that its business plan depended on using hydraulic fracturing, or what is commonly referred to as fracking, to produce oil.  But it knew that the Namibian government would not allow fracking to take place.

Our motion will argue that the allegations of the complaint, even if taken as true, do not satisfy the PSLRA or Rules 12(b)(6) as Rule 9(b) of the Federal Rules of Civil Procedure.  Not sure how much detail Your Honor would like,

but I'm happy to go through those arguments or the general legal principles that would cover it, whatever the Court's pleasure is.

THE COURT:  I think you can go through for me, if you would, your general legal argument.  I specifically would like to understand better your argument about the purported omitted fact not going to the ReconAfrica's current business. I want to understand a little bit more what you are arguing there or anticipate arguing there.  And I'd also like to understand better why you think that loss causation has not been plausibly alleged.

MR. FISHER:  Certainly.  I think as it relates to the former, Your Honor.

First, it's indisputable that ReconAfrica is an exploration company that is still looking for oil and gas deposits that might be developed.  Accordingly, questions about whether the ultimate production might be through fracking, as I alluded to, or conventional drilling, are not ripe, not in a jurisdictional sense, Your Honor, but not ripe for purposes of an alleged violation of the Securities laws, and the allegation that fracking central to the company's business are, therefore, premature.

Second, exploration is by definition involving a review for an exploitable oil or gas deposits, both conventional and unconventional deposits.  And ReconAfrica

has clearly stated that it's looking for any potential exploitable deposits; and therefore, the plaintiff cannot, and indeed has not, allege facts showing that it's only looking for unconventional deposits or that it's ruled out the possibility of conventional deposits existing within its licensed area.

Third, the claim about the Namibian government or the general allegation about the Namibian government's ultimate willingness to grant a license to allow fracking if a deposit if found that requires fracking are, likewise, premature since neither ReconAfrica nor anyone else has applied for a license that would allow that fracking.

Ultimately, Your Honor, notwithstanding any of those failures in the pleading, the complaint fails to show -- fails to connect, rather, the form of block quotations copied from press release and public filings that those statements were misleading because they did not include the allegedly omitted facts.  The plaintiff nowhere explains how or why each of those challenge statements needed to include the allegedly omitted facts to avoid making it misleading.  I would add two important points as it relates to the allegedly misleading statements.

One, is the relevant risks were fully disclosed. Indeed, far from assuring investors that the company's exploration efforts would be fruitful, the company cautioned

investors in its annual information forms, for both 2019 and 2020, that the investment in the company was highly speculative and that there were no assurances that commercially viable oil and gas would be located.  It made specific disclosures about the risk that applicable governmental authorities might not permit the company to engage in oil and gas extraction activities.

Moreover, Your Honor, we believe the complaint also fails under the PSLRA and Rules 12(b)(6) and 9(b) because the allegedly omitted facts were publicly available.  To --

THE COURT:  Yes.  I want to understand that better because I did see argument, of course, in your letter.  But explain to me --

MR. FISHER:  Sure.

THE COURT:  -- in more detail what you mean by that.

MR. FISHER:  Sure.  Well, I guess there's a few points to be made here.  First, unlike what I'll call the traditional securities complaint, this is not a case where there's an allegation that the company possessed informations [sic] that was not available in the public domain.  In B, Paragraph 7 of the complaint, specifically alleges that the company's exploration efforts have been well documented in a variety of prominent media outlets and even reached the highest level of the U.S. government.  Indeed, if you look at

the complaint, nearly every item of information the plaintiff claims the company should have disclosed is coupled with a reference to a third-party source in which that allegedly omitted information was published.  The complaint, otherwise, is based on speculative future events, and those cannot make the company's existing statements misleading.  And to that point, I'd say that the crux of the allegations in the complaint is that ReconAfrica allegedly failed to disclose material facts regarding the prospects for discovery and extracting commercially viable oil and gas deposits.

But the plaintiff's theory presupposes that the company knew what those prospects were at the time the alleged omissions were made, and the question of what oil deposits may or may not be found in the license areas in Namibia and Botswana or how they can be extracted was not only unknown at the time the alleged public statements were made, it remains unknown to this day.  So I think those are both additional points that would be a part of a motion that we would make and significantly undermine the plaintiff's complaint as a matter of law.  I apologize, Your Honor, I didn't get the last -- touch on the last question that you asked, and I --

THE COURT:  I was asking about loss causation.

MR. FISHER:  Yes.  Sorry about that.  So the argument here on loss causation is -- it's a fewfold -- that

there's not a connection.  So let me put it this way.  In addition to not connecting the specific facts showing a material omission and connecting with scienter which is also an argument that we'll make, the allegations here on loss causation fail because they don't show that the alleged losses were caused by investors learning about previously undisclosed information.  The allegedly omitted facts were, as I just mentioned, either publicly available throughout the class period or represent issues, generally, with fracking that ReconAfrica does not currently face.  I suppose stated differently, the plaintiff in the complaint doesn't cite to any disclosure of non-public company information that had been previously undisclosed.  And the two items that it does cite to, the National Geographic articles and this Viceroy Research, which I can elaborate on if the Court would like, don't qualify since they don't purport to be based on non-public information.  I suppose, additionally, the lack of causation we will argue is further demonstrated by the fact that there was not a rapid reaction to the company's stock, to any particular disclosure cited in the complaint or otherwise, but rather the company's --

THE COURT:  Let me stop you on that for a moment because --

MR. FISHER:  Sure.

THE COURT:  -- there are allegations, for example,

at paragraph 242, paragraph 254, paragraph 272.  What's your response to those allegations about the, you know, loss causation based on -- to a corrective statement?

MR. FISHER:  I think that the Court will, in a motion to dismiss, be able to take appropriate notice of what the stock did on certain dates, and I think the argument holds that the stock price peaked in June of '21 and then gradually declined over time through the end of the class period in 2021.  But if there was a new disclosure of previously material non-public information that was supporting an artificially inflated price, I think the cases are consistent that it would have caused the stock to decline precipitously, not gradually over a period of months.

I think, additionally, the suggestion that the complaint makes that the company's price cut quadrupled in the early months of 2021 -- I'm paraphrasing, Your Honor -- in response to the allegedly misleading statements is not plausible because, at least according to the complaint, the same omissions had allegedly been made throughout the class period for more than two years before the sudden increase in June of '21, and they allegedly occurred to the end of the class period when the stock was much lower.  And so the pattern of the company's stock price does not tie to the plaintiff's theory that the "truth" regarding the allegedly admitted facts was not known until Viceroy Research report

was issued.

And, again, while we'll get into this in the motion, Viceroy itself, Your Honor, discloses and makes clear that it has an interest in -- qualifies its research because there should be an assumption taken that it has an interest in the securities at play and stand to realize monetary gains in the event that the price of the stock declines.  And we can cite the -- and would plan to cite that to you in the motion.  I hope that was responsive, Your Honor.

THE COURT:  Yes.  Thank you.  That was helpful.  I want to ask you about your response to plaintiff's claim that there are allegations in the amended complaint that support a strong inference of slander --

MR. FISHER:  Sure.  Yes.  So, Judge, there's two responses.  The first is the general statement that officers and directors have an interest is not enough to establish a strong inference that akin to intent to deceive, manipulate or defraud, otherwise, that would be the case in every case.  So the generic claims about the nature of the company or its individual roles, I think, doesn't hold, pretty clearly, under the Second Circuit's decisions, would be first.

Second, there are, again, no facts alleged that the defendants had specific knowledge that any of the public statements were false or misleading.  And, again, it's what's somewhat unique about this case is there really are no

specific facts pled to show that any defendant possessed non-public information showing that these, as they've defined them, allegedly omitted facts were true or that they contradicted the challenge statements.  And some of that, again, is borne out by the points I made earlier which is really the support underlying the plaintiff's speculation is the subjective opinions expressed in the National Geographic articles and the Viceroy Research reports.

The plaintiff's argument about motive and opportunity, I think, likewise, fail because they can't satisfy the burden that the individual defendants or other non-defendant company managers sold stock in a way that is sufficient to establish opportunity and motive to commit fraud, as I'm sure the Court is well aware.  Mere executive stock sales standing alone are not sufficient to support a strong inference of intent.  And here, while the plaintiff does point to stock sales and stock option transactions by two of the seven defendants and two non-defendant executives, the plaintiff still runs into a couple problems.  Those are Paragraphs 113 and 119 of the complaint, Your Honor.

First, five of the seven defendants, including the former CEO and the former CFO during the time of the allegedly false statements, are not alleged to have sold any stock during the class period.

Second, neither of the two individual defendants

who did allegedly sell stock sold more than half their holdings, and all of the executives who are alleged to have sold stock joined the company shortly before the alleged transactions took place.  So we believe that the Court will be in a position to conclude that there's not a plausible claim because there's no context to show that the stock sales were unusual in relation to past practices.

And finally, any claim that the timing of the sales is suspicious is belied by the fact the sales did not occur at the same time or at one time but, instead, over a five-month period.

And last, I'd add, I think the plaintiff's arguments on this point fail because the transactions cannot be tied to any of the allegedly omitted facts, again, as the plaintiff refers to them in defined term, because, as I alluded to earlier, the plaintiff's allegation is that the same omissions had allegedly been occurring throughout the class period and for almost a full two years before and some months after these challenged stock sales.

I think that those would be the primary reasons -- primary responses, rather, Your Honor, to the points the plaintiff has raised.

THE COURT:  Thank you.  I'm going to turn to Mr. Spencer now for any response he has or anything else he'd like to raise.

MR. SPENCER:  Thank you, Your Honor.  And my friend Mr. Fisher gave me a lot to respond to there.  So I hope you'll bear with me.  I'll be happy to answer questions you may have.

First, Mr. Fisher characterized the crux of our argument as relating to, you know, whether or not fracking would occur.  That's certainly an element of our argument, but, as you saw in our letter, we have three distinct categories of falsity claims.

The first is that tenor from the company's inception up until September, October of 2020.  The company was stating that they were focused on unconventional oil production, which is a code word for fracking.  And we alleged that they had made no determination of whether Namibia would allow fracking.  So that was materially misleading to investors.

The second, being that after, in September of 2020, the Namibian government came out and said fracking hasn't been authorized, we have some concerns about fracking, and the company then abruptly changed its tune and said no, no, no, we're focused on conventional resources.  All the while, still intending to engage in fracking, it's necessary to extract deposits they found which was materially misleading.

And the third category of false statements being those relating to the test well results that the obtained

over the spring and summer of 2021, selectively revealing cherry-picked information while withholding negative results that give a materially false impression of the prospects for a commercial discovery.  Sorry.  I'm just referring to my notes here.

Regarding Mr. Fisher's argument that the omitted facts do not go to the current business model because ReconAfrica is an exploration company that doesn't have current production.  That's still materially misleading, whether the company's set of opportunities was limited to conventional extraction or also included the much broader universe of possible opportunities to produce oil and gas using fracking, is highly material to investors.  A company that can engage in either is going to be much more valuable, and that should be obvious.

Regarding the statement that the company told investors that it was looking for any exploitable deposits.  That's simply not what is alleged in the complaint and not our understanding of the company's statements during the class period.  As discussed during the early portion of class period, the company was telling investors they planned to engage in unconventional extraction, aka fracking.  During the later period of the class period they switched their story and said they were only interested in conventional deposits.  Both of those were materially misleading.

Superior Reporting LLC
P.O. Box 5032 Maryville, TN 37802
transcripts@superiorreporter.com

Regarding the arguments that we fail to connect block quote statements that we say are false to any particular reasons why they're false, the complaint is highly selective on the information that's quoted.  There are, necessarily, a few block quotes just for context in each section of the complaint alleging false statements.  At the end of that section is an exact statement of why the challenge statements, therein, were false or misleading.

Regarding the argument that relevant risks were fully disclosed.  The language that Mr. Fisher cites here defeats its own argument.  Stating that the company is highly speculative says nothing about the particular facts that were material to investors.  The fact that the company had not determined if Namibia would allow fracking.  The fact that they still hoped to engage in fracking despite Namibia saying it wouldn't be allowed.  The fact that they had well data showing poor prospects for commercial production.  These are all material facts and statements such as there's no assurance we will succeed or the authorities might not grant us permission, are simply insufficient, as a matter of law, to alert investors the material relevant risks.  Mr. Fisher argued that there's no allegation in the complaints that the defendants possessed adverse information at the time of their statements.  Again, that is not what's alleged in the complaint and not our understanding of the facts.  There's no

Superior Reporting LLC
P.O. Box 5032 Maryville, TN 37802
transcripts@superiorreporter.com

way that the public could have known without ReconAfrica telling them that ReconAfrica had never obtained permission or determined whether Namibia would allow fracking.  That was not a publicly-disclosed fact.  Likewise, there was no way the public could have known that ReconAfrica's business plan still secretly revolved around intentions to frack.  Again, not publicly disclosed.

And the third category, and perhaps the most obvious and telling, is the test well data.  ReconAfrica had all the test well data.  None of it was public.  They selectively decided to reveal some, while withholding the negative, information.  Again, not a publicly disclosed fact. Mr. Fisher argues that all of the relevant information was disclosed by third parties.  Well, some of it was disclosed by Viceroy.  This was towards the end of the class period that the fraud was revealed, resulting in substantial losses to ReconAfrica investors.  The information and the disclosures did not happen at the outset of the class period as Mr. Fisher would have the Court believe.

Regarding loss causation, as Your Honor pointed out, in our pre-motion conference letter we cite specific paragraphs with complaint alleging substantial stock drops of over 12 percent on three separate dates, and those are exact dates when corrective disclosures are alleged in the complaint to have been made, revealing the truth to the

investors. Those allegations show the market responding immediately and negatively to the revealed information, and Mr. Fisher's argument that we're dealing with some sort of generalized and attenuated stock drop over a monthlong period, it's simply not what is alleged in the complaint. Although, the stock did fall repeatedly on specific dates by large amounts over that period, all of which are alleged with specificity in the complaint.

Mr. Fisher's argument regarding the quadrupling of the company's stock price in early 2021, he says that it's not a credible argument because the complaint alleges the same omissions being made over and over again, so there's no reason why it would have promptly quadrupled in early 2021. The complaint directly ties that quadrupling into our allegations that this is the period when ReconAfrica started hyping its test wells and its drilling program while omitting the negative data they were seeing from the test wells. That's highly material information to investors finally getting the raw facts on, you know, what are the prospects for commercial oil and gas production here? What is the evidence on the ground? And that is highly plausible and makes perfect sense that the stock price would respond dramatically and quadruple, in fact, in response to the defendants' misleadingly positive statements, cherry-picking certain results.

As to Viceroy's financial interests, courts within the Second Circuit repeatedly find that, even where a corrective disclosure results from a short seller or other party with a financial interest, that is not a bar defining loss causation.  Those reports can be perfectly credible, and courts have over and over again found similar reports to be adequate for purposes of revealing falsity and pleading loss causation.

Regarding Mr. Fisher's scienter arguments, he alluded to our allegations that the company needed to raise funds for survive and had no revenues and that the defendants or the senior executives and officers and board members of the company, he says that those are not relevant to the scienter analysis.  While those allegations are not the centerpiece of our scienter argument and may or may not be sufficient on their own to support scienter, they certainly add to the holistic inference of scienter, and as the Supreme Court has instructed, it is holistic inquiry looking at all the scienter allegations together.  And other courts have found that similar allegations regarding a company's need to fund raise do add to the inference of scienter.

Mr. Fisher argues that there are no facts alleged showing that the company or the defendants had specific information in their possession at the time, but, as previously discussed, that is simply not the case and is not

what is contained in the complaint.  Specifically, I would direct Your Honor's attention to page 71 where we allege, and under the section Additional Scienter Allegations, a time line of the defendants' own statements showing that they possessed additional well data throughout the entire period that they were selectively revealing only positive test well results.

THE COURT:  Thank you.  Is there anything else you'd like to raise?

MR. SPENCER:  I've got one or two more notes.

THE COURT:  Sure.

MR. SPENCER:  On the motive and opportunity allegations, Mr. Fisher says that stocks held are not sufficient.  But as the Second Circuit authority cited in the letter motions show there are two ways to plead scienter and a securities fraud action.  One is motive and opportunity, and that is frequently done through insider stock sales.  The other being conscious recklessness.  As we plead in the complaint, the defendant CEO and defendant CFO both sold substantial portions of their own ReconAfrica securities holdings during the class period, in fact, during the period of the stocks quadrupling after the releasing of the misleading partial test well results.  And we also allege that those stock sales were dramatically out of line with the defendants' prior sales.

And that is all that I wanted to address, Your Honor, but if the Court has any questions, we'd be happy to discuss them.

THE COURT:  Thank you.  I don't think I have any specific questions for you.  Let me just turn back, though, to Mr. Fisher if he has any brief response.  I do want to ask Mr. Fisher to address the test well data point that you raised.

MR. FISHER:  Yes.  Your Honor, I think my general response to the arguments -- Mr. Spencer really highlights a core of our argument which is the question of whether this, when looked at completely, satisfies the requirements of the law.  At some points, it becomes a bit tautological.  Of course, this was an immature company and was focused on exploration, yet many of the arguments made are really more focused on cases and companies that would be more mature. The plaintiff's efforts to minimize the import of the specific disclosures in the company's AIFs is certainly the plaintiff's right.  We suggest that rather the disclosures contradict any claim that any investor could have been misled about the risk the company might not find commercial exploitable oil or gas or might not be able to get a license and belie the argument the company gave no public indication that there would be any particular difficulty or even that there was any substantial uncertainty in obtaining approval

in Namibia.

The second point I'll observe, which, it's a question, Your Honor, is the law is quite clear that a company is not obligated to disclose every fact, and while certainly disclosed facts must be accurate and truthful, I suggest the plaintiffs' allegations ignore the notion that the Securities laws do not create an affirmative duty to disclose any and all material information, and rather, this is an omission case. And omission is really only actionable when disclosure of the information is necessary to make the statements, in light of the circumstances in which they were made, not misleading. And suggest to the Court that the complaint, including the allegations with regard to the test well data, fails to explain how or why each of the challenge statements needed to include the allegedly omitted facts to avoid making it misleading to investors.

And I think that the complaint as alleged and the case law as we will argue do not connect or explain why any particular statement must necessarily be accompanied by these allegedly omitted facts. And we'll reiterate that it is important in this context that the company was engaged in exploration, not production, and the state of its affairs impact any obligation it may have had.

THE COURT:  Thank you.  Is there anything else you'd like to raise?

MR. FISHER:  No, Your Honor.

THE COURT:  Okay.  I found these comments and arguments helpful, and I did find your letters helpful as well.  What I'd like to do is to give the parties an opportunity to talk with each other and to propose a briefing schedule to me within a week.  So by July 20th, I ask that the parties jointly put in a letter with a proposed briefing scheduled for defendants' motion to dismiss.  Is there anything --

MR. FISHER:  Yes, Your Honor.

THE COURT:  Sure.  Is there anything else that anyone thinks we need to take up today before we adjourn?

Mr. Spencer?

MR. SPENCER:  Nothing for the plaintiffs, Your Honor.

THE COURT:  Thank you.  Mr. Fisher?

MR. FISHER:  No, Your Honor.  Just appreciate your time this afternoon.

THE COURT:  Thank you, and thank you all, and I appreciate your responsiveness to my questions.  We are adjourned.

(Proceedings adjourned at 3:37 p.m.)

TRANSCRIBER'S CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

August 5, 2022

*Sandra Tuizer*

_____          _____

Sandra Tuizer, CET-1236                                          DATE

Legal Transcriber

Superior Reporting LLC
P.O. Box 5032 Maryville, TN 37802
transcripts@superiorreporter.com