**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE RECONNAISSANCE ENERGY AFRICA LTD. SECURITIES LITIGATION | Case No. 1:21-cv-06176-NRM-RML<br><br>Honorable Robert M. Levy |

**STIPULATION AND [PROPOSED] ORDER REGARDING THE**
**<u>PRODUCTION OF DISCOVERY</u>**

1.    **PURPOSES AND LIMITATIONS**

Discovery requests and subpoenas served in the Action may call for the production of electronically stored information.  Accordingly, the Parties hereby stipulate to and petition the Court to enter the following Stipulation and [Proposed] Order Regarding The Production of Discovery ("Stipulated Order").

2.    **DEFINITIONS**

2.1    Action:  means the above-referenced action.

2.2    Document:  has the meaning ascribed to it in Federal Rule of Civil Procedure 34(a)(1)(A).  The term "Document" shall include Hard-Copy Documents and ESI as defined herein.

2.3    Email:  means electronic messages sent or received asynchronously via messaging applications, including, but not limited to, Microsoft Outlook, Google Gmail, or Lotus Notes.

2.4    Email Threading:  means a single email conversation that starts with an original email (the beginning of the conversation), and includes all subsequent replies and forwards pertaining to that original email.

2.5    ESI:  an abbreviation of "electronically stored information," which has the meaning ascribed to in Federal Rule of Civil Procedure 34(a)(1)(A).

2.6    Extracted Text:  means text extracted from a Native Format file and includes at least all headers, footers, document body information, and any hidden text, if available.  The extracted text must not include text of characters that were not part of the text of the original Native Format file, including but limited to, Bates Numbers and Endorsements (except in the cases of redactions).

2.7    Hard-Copy Document:  means Documents existing in paper form at the time of

1

collection.

2.8     <u>Hash Value</u>:  means the unique numerical identifier that can be assigned to a file, a group of files, or a portion of a file, based on a standard mathematical algorithm applied to the characteristics of the data set.  The most commonly used algorithms, known as MD5 and SHA, will generate numerical values so distinctive that the chance that any two data sets will have the same Hash Value, no matter how similar they appear, is less than one in one billion.  "Hashing" is used to guarantee the authenticity of an original data set and can be used as a digital equivalent of the Bates stamp used in Hard-Copy Document productions.

2.9     <u>Instant Messages</u>:  means real time communications sent via chat client or SMS, including but not limited to Bloomberg Chat, Slack, Google Talk, Google Chats, Google Hangouts, Microsoft Teams, WhatsApp, WeChat, AOL Instant Messenger, Blackberry Messenger, ICQ, Pidgin, Line, Audium, Trillian, or any proprietary instant messaging system.

2.10     <u>Load File</u>:  means an electronic file that is used to import all required production information into a document database, including, if available, document images, Extracted Text or OCR text, Native Format files where required by this Stipulated Order, and Metadata, as well as information indicating document breaks, and document relationships such as those between an Email or Instant Message and its attachments, and a document and information related to embedded content.

2.11     <u>Metadata</u>:  means (i) structured information about ESI that is created by the file system or application that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file, embedded in the Document or Email and sometimes modified through ordinary business use; (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created,

2

modified, transmitted, deleted, or otherwise manipulated by a user of such system; (iii) information, such as Bates Numbers, created during the course of processing Documents or ESI for production; and (iv) information collected during the course of collecting Documents or ESI, such as the name of the Media device on which it was stored, or the custodian or non-custodial data source from which it was collected.  Metadata of the ESI describes, *inter alia*, the characteristics, origins, usage, and validity of the collected ESI.

2.12    Native Format:  means the format of ESI in the application in which such ESI was originally created.

2.13    OCR:  means the optical character recognition technology used to read Hard-Copy Documents or electronic images of Documents and output such Documents to a searchable text format.  The latter text is also referred to as the "OCR text" or simply "OCR."

2.14    Party:  means any party to the Action, including all of its officers, directors, and employees or any other person or entity that is served a subpoena pursuant to Federal Rule of Civil Procedure 45.

2.15    Producing Party:  means any Party or third-party in the Action that produces Documents.

2.16    Receiving Party:  means a Party in the Action to whom Documents are produced.

2.17    Responsive Document:  means any Document that is responsive to any discovery request or subpoena served on the Producing Party in the Action and which the Producing Party has agreed or been ordered to produce, subject to the limitations set forth in the Federal Rule of Civil Procedure and/or Court order.

2.18    Tagged Image File Format or TIFF:  refers to the CCITT Group IV graphic file format for storing bit-mapped images of ESI or Hard-Copy Documents.

**3.    SCOPE**

The procedures and protocols set forth in this Stipulated Order shall govern the production format of Hard-Copy Documents and ESI in this Action, to the extent available, reasonably accessible, and proportional to the needs of the Action.  Nothing in this Stipulated Order is intended to enlarge, reduce, or otherwise affect the scope of discovery in this litigation as imposed by the Court's orders.  Nothing in this Stipulated Order is intended to expand or limit the obligations under the Federal Rules of Civil Procedure.  Nothing in this Stipulated Order shall be interpreted to require disclosure of materials that a Party contends are not discoverable or are protected from disclosure by the attorney-client privilege, the attorney work product doctrine, or any other privilege that may be applicable.  Additionally, nothing in this Stipulated Order shall be deemed to waive or limit any Party's right to object to the production of certain ESI, or to move for an appropriate order on the ground that the sources are not reasonably accessible because of undue burden or cost or on the ground that there is no good cause for the Documents' production.  Nothing in this Stipulated Order is intended to narrow, expand, or affect the rights of the Parties or third parties to object to a subpoena.  This Stipulated Order does not govern the scope of responsive data, custodian selection, or any technology-assisted culling or review processes, such as the use of keyword search terms.  Nothing in this Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Action.

The production specifications in this Stipulated Order apply to documents that are produced in the first instance in this Action.  To the extent any Party is required or agrees to re-produce Documents in this Action that originally were produced in other cases or government investigations, such Documents may be produced in the same format in which they originally were produced if the original production included substantially the same Metadata identified in

4

this Order.  If such Documents originally were not produced with substantially the same Metadata identified in this Order, the Parties shall meet and confer to discuss whether production of a Metadata overlay or supplemental Metadata production for those Documents is necessary, feasible, and proportional to the needs of this case.  The Parties agree that this is not a request to produce the same electronically stored information or Documents in more than one form; rather, it is a process for identifying supplemental information that does not require reproduction of previously produced Documents.

The Parties will attempt to resolve, in person, in writing (including email), or by telephone, disputes regarding the issues set forth herein before filing a motion with the Court, or otherwise seeking relief.  If the Parties are unable to resolve the dispute after a good-faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

3.1    Document and Data Sources:  Except as otherwise agreed upon in this Stipulation, and to the extent that document collection and preservation has not already been completed, the Parties will meet and confer in an effort to agree upon the following: (a) list of records custodians; (b) lists of custodial and non-custodial data sources for collection and processing; and (c) search methodology to be applied, including but not limited to, search terms, date restrictions, and any technology assisted review ("TAR") protocol.

3.2    Search Methodology: The Parties agree to undertake reasonably diligent, good faith efforts to search for and produce unique, responsive records from those custodial and non-custodial sources that the Parties have either agreed to search, or which the Court has ordered such Party to search, which are in the possession, custody, or control of the Producing Party.

3.3    Determinations:  The mere fact that a Document is hit or captured by the application of any agreed upon search terms or search methodology does not mean that such

5

Document is necessarily responsive to any propounded discovery request or is otherwise relevant to this litigation. Determinations of discoverability, responsiveness, and privilege shall be made by the Producing Party. Consistent with The Sedona Conference Principles, Principle 6, the Producing Party is best suited to evaluate the procedures, methodologies, and technologies appropriate for preserving and producing their own electronically stored information.

      3.4    <u>ESI Not Required</u>: The Parties agree that the following ESI does not require preservation, collection, review, or production because they are either not reasonably accessible or because the remote possibility of additional relevant information existing in not reasonably accessible sources is substantially outweighed by the burden and cost of preservation, collection, review, and production:

    a.    Deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensics;

    b.    Random access memory (RAM), temporary files, or other ephemeral data that is difficult to preserve without disabling the operating system;

    c.    On-line access data such as temporary Internet files, history, cache, cookies, and the like;

    d.    Data stored on photocopiers, scanners, and fax machines;

    e.    Data in metadata fields that are frequently updated automatically, such as last-opened dates;

    f.    Data maintained or duplicated in any electronic backup system for the purpose of system recovery or information restoration, including, but not limited to, system recovery backup tapes or other media, continuity of operations systems, and data or system mirrors or shadows, if such data are routinely purged,

overwritten, or otherwise made not reasonably accessible in accordance with an established routine system maintenance policy;

g.       Server, system, or network logs;

h.       Data remaining from systems no longer in use that is unintelligible on the systems in use;

i.       Video surveillance data; and

j.       Email, calendars, and contact data sent to or from mobile devices (*e.g.*, iPhone, iPad, Android, and Blackberry devices), provided that a copy of all such electronic data is saved elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

Nothing herein shall prevent a Party from subsequently requesting that Documents from the sources identified above be preserved and produced if specific facts demonstrate a particular need for such Documents that justifies the burden of preservation and retrieval.

3.5      Additional Custodians or Data:  The Parties have a continuing obligation under Federal Rule of Civil Procedure 26(e) to supplement or correct their respective disclosures or responses in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.  The Parties reserve the right to request inclusion of additional custodians or non-custodial data sources whose relevance was discovered via documents or data produced, or testimony given, or for other good cause shown, within a reasonable time of such discovery.  If the Producing Party objects to the inclusion of such sources, the Parties will meet and confer to resolve the matter.  If the Parties cannot reach resolution, the Court will determine the matter.

3.6    The Parties acknowledge that they have an obligation to take reasonable steps, proportionate to the needs of the case, to preserve discoverable information in the Party's possession, custody, or control.

## 4.    PRODUCTION FORMAT

4.1    Format Guidelines:  The Parties shall, to the extent reasonably and technically possible, produce either Hard-Copy Documents or ESI, as applicable, according to the specifications provided in Exhibit A.

4.2    De-Duplication:  A Party is only required to produce a single copy of a responsive Document.  Each Party may remove exact duplicate Documents (*i.e.*, identical copies of the same Document), including but not limited to Email, to reduce the unnecessary cost of reviewing and producing exact duplicate Documents.  If a Party chooses to remove exact duplicate documents, the Party shall make reasonable efforts to remove exact duplicate ESI according to the MD5/SHA-1 hashing method and shall identify all custodians of de-duplicated Documents in the Custodian field delimited by semicolons or in a MasterCustodian field delimited by semicolons (as set forth in Exhibit A).  Moreover, (a) de-duplication shall be performed only at the Document family level[1] so that attachments are not de-duplicated against identical stand-alone versions of such Documents and vice versa, although each family member shall be hashed separately for purposes of populating the HashValue field in Exhibit A; and (b) attachments to Emails, Instant Messages, or other Documents shall not be disassociated from the parent Email,

---

[1] Unless otherwise agreed upon by the Parties, a family can only be removed through de-duplication if each and every member of the de-duplication candidate family has identical MD5/SHA-1 hashcodes to the corresponding members of another family.   For example, if there is a two-member family with a parent and an attachment, the MD5 hashcodes of each parent must be identical and the MD5 hashcodes of each attachment must also be identical.  See Section 9, Email Threading, regarding the de-duplication of Emails in such a way as to eliminate earlier or incomplete chains of Email.

Instant Messages, or Document even if they are exact duplicates of another Document in the production. ESI that is not an exact duplicate according to the method specified in Exhibit A may not be removed. The Parties shall make reasonable efforts to reach agreement on any de-duplication criteria to be used.

4.3    Encryption: The Parties will make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production under the requirements of this Order, and if produced in Native Format, the decrypted Document is produced. To the extent encrypted or password-protected Documents are successfully processed according to the requirements of this Order, the Parties have no duty to identify the prior encrypted status of such Documents. If documents are not successfully processed despite use of reasonable efforts, a placeholder TIFF image will be produced stating the file is password protected. Upon request from either Party, the Parties shall meet and confer in good faith regarding reasonable efforts or mechanisms to remove such security protection or the production of available Metadata.

4.4    Documents to Be Produced Natively: Microsoft Excel and other spreadsheet files, including comma or tab delimited text files, Microsoft Access and other database files video files, audio files, and animation files shall be produced in Native Format. If a document to be produced in Native Format contains privileged or other information requiring redaction, reasonable efforts will be made to produce the document in TIFF format with redactions and OCR text to remove the privileged or otherwise protected material from the searchable text. Where the document containing privileged information is too voluminous to produce in TIFF format, the Producing Party may redact the document in native format provided the metadata of the original document is made available to the Receiving Party. The Parties may meet and

9

confer to discuss the most appropriate and cost-effective production format.

Each electronic file produced in Native Format shall be assigned a unique Document Number, as set forth in Section 4.10, and the database record for that file shall include a single page TIFF image branded with this unique Document Number in the lower right corner of the image as a Bates Number, with the phrase "PRODUCED IN NATIVE FORMAT" (or similar language) branded in the center of the page.  To protect the confidentiality of files produced in Native Format, any confidentiality designations pursuant to the Stipulated Confidentiality Order must appear on the associated TIFF placeholder in no less than 10-point font.  Files produced in Native Format shall be given file names identical to the Document Number, followed by the file extension and include the confidentiality designation after the file number, *e.g.*, RECON0000000000_CONF.xlsx.  For each file produced in Native Format, the Producing Party shall also indicate its native status in the Native File Metadata field described in Exhibit A.

4.5    Embedded Files:  OLE or other linked and/or embedded objects (*e.g.*, embedded MS Office files, Google Office suite files, or Tableau files or visuals) shall be extracted as separate files and treated as attachments to the parent document.  Images embedded in emails shall not be extracted and produced separately.

4.6    Databases:  To the extent a response to a non-objectionable discovery request requires production of discoverable electronic information contained in or created from a database maintained in the normal course of business (*e.g.*, Oracle, Tableau or SQL databases), the Parties will meet and confer to discuss the most appropriate and cost-effective production format, which may include an export of data in database or delimited text file format, as database reports.

4.7    Production of Documents in Native Format:  Each Party reserves the right to

10

request production of ESI, including previously produced ESI, in Native Format for any ESI that it believes is not adequately represented in the TIFF format specified in Exhibit A, and, upon a showing of reasonable need, such requests will not be denied.  If the Parties are unable to agree as to the production of the requested Documents in Native Format, the Parties may submit the matter to the Court.

4.8     Attachments:  The Parties agree that if any part of an Email or its attachments is responsive, the entire family of Email and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege, immunity or privacy laws and subject to the producing party's use of de-duplication and e-mail threading as outlined in this Order.

4.9     Unitization:  In scanning paper Documents, each page of paper should be output to a single page TIFF file.  Distinct, logical document breaks should be defined as such in a standard load file as described in Exhibit A.  In the case of an organized compilation of separate Documents (*e.g.*, a binder containing several separate Documents behind numbered tabs) the Document behind each tab should be scanned separately, but any document or family relationship among the scanned Documents in the compilation should be reflected in the data load file at the appropriate standard fields.  Pages containing post-it notes or other detachable notes that obscure the underlying Document should be scanned once with the detachable note intact, and then again without it, and made part of the same Document.  The Parties shall make reasonable efforts to unitize the Documents correctly.

4.10    Document Numbers and Confidentiality Designations for TIFF Images:  Each page of a Document produced in TIFF file format shall have a legible, unique fixed-length numeric identifier ("Document Number") containing at least ten (10) digits electronically "burned" onto the image in no less than 10-point font.  Unless it would obscure, conceal, or

interfere with any information originally appearing on the Document, the Document Number shall be burned on the lower right hand corner of the Document.  Bates Numbers and any confidentiality designation should not be included in the extracted text of ESI.  Unless it would obscure, conceal or interfere with any information originally appearing on the Document, any confidentiality designation pursuant to the Stipulated Confidentiality Order filed with the Court will appear on the lower left hand side of each page of a Document produced, in no less than 10-point font.  The Document Number for each Document shall be created so as to identify the Producing Party and the Document Number (*e.g.*, "RECON0000000000").  There should not be an underscore or dash between the prefix and the Document Number.  Each Party's document numbering scheme shall use the unique identifying name agreed upon by the Parties.

4.11  <u>Metadata Fields and Processing</u>:  Each of the Metadata and coding fields set forth in Exhibit A that can reasonably and technically be extracted or generated from a Document shall be produced for that Document.  To the extent that metadata in Exhibit A does not exist or is not reasonably accessible or available for any documents produced, nothing in this Order shall require any Party to extract, capture, collect, or produce such data, with the exception of the following fields, if available: (a) BegBates; (b) EndBates; (c) BegAttach; (d) EndAttach; (e) Custodian; (f) Redacted (Y/N); (g) Confidentiality; and (h) HashValue.[2]  Metadata shall be provided in a Concordance-format delimited file with a .DAT file extension and ASCII 020 and 254 delimiters for column break and text qualifier.  The first line shall be the header with field names, and each subsequent line shall contain the fielded data for each Document.  The Parties also agree that every production of previously unproduced Documents with a Concordance-format delimited file with a .DAT file extension shall contain all of the Metadata field headers

---

[2] In the case of Documents that were scanned from paper, the HashValue field is not required.

from Exhibit A and that the Metadata field values for each Metadata field header will be mapped to the same Metadata field source, unless otherwise agreed in writing.  For redacted items which were originally ESI, all non-privileged metadata fields will be provided and will include all non-privileged non-redacted data.  Redacted documents shall be identified as such in the load file provided with the production.  Nothing herein shall require a Producing Party to create or produce Metadata that does not exist, cannot be generated by ESI processing software, or is not reasonably or technically accessible.  When the Producing Party is unable to produce metadata for a particular field or ESI document, the Receiving Party may request an explanation of that inability.  The Parties shall then meet and confer to attempt to resolve the problems.

      4.12   <u>Production Media</u>:  The Producing Party shall produce Document images, Native Format files, load files, and Metadata on hard drives, CDs, DVDs, secure FTP, or other mutually agreeable media ("Production Media").  Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of Documents on the Production Media, and the Document Number ranges of the Documents in that production (*e.g.*, "ReconAfrica's Production June 2, 2023, RECON0000000123 - RECON0000000456").  To the extent that the Production Media includes any confidential information protected under any Stipulated Confidentiality Order filed with the Court, the label on such Production Media shall indicate that the Production Media includes information so designated as required under the terms of the Stipulated Confidentiality Order.  Production Media shall include text referencing the case name and number.  Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement, and cross-reference the Document Number range that is being replaced.  All Production Media that is capable of write protection should be write-protected before production.

All Production Media may be encrypted, with the Producing Party to provide a decryption key under separate cover at the time of production.

4.13  Original Documents:  Nothing in this Stipulated Order shall eliminate or alter any Party's obligation to retain original and Native Format copies of Documents, including associated metadata, of all ESI preserved for and produced in the litigation and/or original versions of all Hard Copy Documents preserved for and produced in the litigation.  Nothing in this section alters a Party's obligation to retain data pursuant to the Federal Rule of Civil Procedure and/or Court Order.

4.14  Scanning of Hard-Copy Documents:  In scanning Hard-Copy Documents, Documents are to be produced as they are kept.  For Documents found in folders or other containers with labels, tabs, or other identifying information, such labels and tabs shall be scanned where practicable.  Pages with Post-It notes shall be scanned both with and without the Post-it, with the image of the page with the Post-it preceding the image of the page without the Post-It.  The Producing Party will use best efforts to unitize Documents.

4.15  Color:  Color originals may be produced in black and white TIFF format.  To the extent color is necessary to decipher the meaning, context, or content of the Document or ESI, the Receiving Party may request a color production.  The Parties can meet and confer in good faith with regard to any issues arising from this aspect of production that may arise.

4.16  Lost, Destroyed or Irretrievable ESI: If a Producing Party learns that responsive ESI that once existed was lost, destroyed, or is no longer retrievable as a result of acts or circumstances not occurring in the ordinary course of business, the Producing Party shall comply with its obligations under the Federal Rules of Civil Procedure to explain where and when the responsive ESI was last retrievable in its original format and to disclose the circumstances

14

surrounding the change in status of that responsive ESI, whether that information is available from other sources, and whether any backup or copy of such original responsive ESI exists. Nothing in this paragraph is intended to expand or limit the obligations under the Federal Rules of Civil Procedure.

4.17    Foreign Language Documents:  To the extent that documents or ESI are produced that contain languages other than English, in whole or in part, the Producing Party shall produce all foreign language document and ESI in the original language.  The Producing Party has no obligation to provide a translation of the documents or ESI or any portion thereof.

4.18    Inadvertent Disclosure of Privileged or Work Product Material:   The Parties intend that Federal Rule of Evidence 502(d) and Section 13 of the Stipulated Confidentiality Order entered by the Court shall govern inadvertent production of ESI that includes attorney-client privileged information, information protected by the work product doctrine, or information protected by other privilege or immunity.

## 5.    PROCESSING SPECIFICATIONS

The Producing Party will generate and preserve the MD5 or SHA-1 hash values of all ESI based on the Native Format file.  The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production: Where Documents are not otherwise produced natively, all TIFF images shall display deletions, revisions, comments, speaker notes, and other rich data (including, but not limited to, hidden text, strikethrough text, the identity of the person making the deletion or revision and the date and time thereof, etc.) as displayed in the Document, regardless of the display setting for this information as last saved by the custodian, to the extent reasonably and technically possible. Producing Parties shall make reasonable efforts to process all ESI with a single time zone and a

15

date and time setting that is consistent across all of the Parties' productions and shall make reasonable efforts for that time zone to be Central Time.  The Parties agree to meet and confer in good faith with regard to any issues arising from this aspect of production that may arise.

**6.      CONFIDENTIALITY**

Documents produced in the Action shall be subject to the terms of the Stipulated Confidentiality Order agreed upon by the Parties, and entered by the Court, as well as Federal Rule of Civil Procedure 26(b)(5)(B).

**7.      REDACTION**

The Producing Party may redact privileged or otherwise protected information, and personal identity information within a responsive document.  If, during the course of discovery, the Parties identify other kinds of information that and Party has a reasonable basis for redacting, the Parties will meet and confer regarding it before such redactions are made.

**8.      PRIVILEGE & PRIVILEGE LOG**

8.1      The Parties agree that they need not initially exchange the text of litigation hold/retention instructions issued in this litigation.

8.2      The Parties agree to exchange privilege logs that comply with Federal Rule of Civil Procedure 26(b)(5).  Any claim that produced documents are covered by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity ("Privileged Material"), any belief that such documents are not Privileged Materials, and any challenge to such claim shall be subject to the terms of the Stipulated Confidentiality Order agreed upon by the Parties and entered by the Court.

8.3      The Parties agree that the following privileged communications or documents need not be included in a privilege log (so long as no third party was included on the

16

communication and/or the document does not appear on its face to have been transmitted to any third party): (a) communications to or from outside legal counsel for Defendants in this Action; (b) communications exclusively between inside counsel and outside legal counsel; (c) work product of counsel and Parties related to this Action; (d) any internal communications within a law firm that post-date the filing of this Action; (e) any communications regarding litigation holds or preservation, collection, or review in this Action; and (f) any communication involving counsel or documents containing work-product of counsel that post-date the filing of this Action. The Parties will meet and confer in good faith regarding the scope of the privilege log should any issue arise.  Further, the Parties agree that documents that have been redacted for privilege need not appear on a privilege log in the first instance so long as the reason for redaction is on the face of the document; to the extent the basis for the redaction is not apparent from the face of the document, the Receiving Party may request additional information in order to assess the claim of privilege pursuant to Section 8.6.

8.4     In an effort to avoid unnecessary expense and burden, the Parties agree that, for documents withheld from production on the basis of attorney-client privilege, work product doctrine and/or any other applicable privilege, the Producing Party may prepare a log containing, for each document (except those exempted in Paragraph 8.3 above), an export of the metadata fields listed below to the extent such information exists and has not been suppressed or redacted for privilege.  The export should include the following information from the top line email:

- BegNo (if not produced) or BegBates (if produced)
- EndNo (if not produced) or EndBates (if produced)
- BegAttach (if not produced) or BegBatesAttach (if produced)
- EndAttach (if not produced) or EndBatesAttach (if produced)
- Custodian
- From
- To
- CC

- BCC
- Email Subject
- DateSent
- FileName
- Author
- DateCreated
- MD5 HASH
- Privilege Type

8.5     If the Receiving Party requires further information, it shall explain in writing the need for such information and identify, by Bates Number or other unique identifier, each document for which it seeks this information.  Within thirty (30) days of such a request, the Producing Party must provide a description the nature of the withheld information that will enable the Receiving Party to assess the claim of privilege.  The Producing Party may provide such description for individual documents, or for categories of documents or ESI if individual review and description is not worth the time and/or expense required to do so.

8.6     Contesting Claim of Privilege or Work Product Protection:  If the Receiving Party contests the claim of attorney-client privilege or work product protection, the Receiving Party must notify the Producing Party in writing.  The Parties must meet and confer and make a good faith effort to cooperatively classify the challenged documents and ESI into categories that are subject to common factual and legal issues in so far as practicable.  Thereafter, the Parties shall jointly request a conference with the Court to devise a plan for resolving the challenges.

**9.     EMAIL THREADING**

Each Party may de-duplicate and suppress lesser inclusive emails and any identical attachments associated with an email chain, but only to the extent all unique, responsive content from the email chain and unique, responsive attachments are produced.

18

**10.   TECHNOLOGY ASSISTED REVIEW**

The Producing Party reserves the right to employ all available technological options, including Predictive Coding or Technology Assisted Review.  The Producing Party agrees to disclose which technical options, including appropriate process-related details, are used to eliminate documents from review.  The Receiving Party may object to the Producing Party's selected methodology of predictive coding, e-mail threading, and file type culling at an appropriate time.

**11.   SYSTEM FILES**

Each Party may exclude certain files and folders that are reasonably identified as common system files defined by the NIST library and not likely to contain user-created files.

**12.   THIRD-PARTY ESI**

A Party that issues a non-party subpoena (the "Issuing Party") shall include a copy of this Order with the subpoena and state that the Parties to the litigation have requested that third-parties produce documents in accordance with the specifications set forth herein.  The Issuing Party is responsible for producing any documents obtained under a subpoena to all other Parties.

**13.   AMENDMENT OF ORDER**

Nothing herein shall preclude any Party from seeking to amend this Order in writing for good cause shown, provided, however, that no Party may seek relief from the Court concerning compliance with the Order until it has met and conferred in good faith with any Parties involved in the dispute.

**So Ordered.**

**Dated:** _____        _____

Honorable Robert M. Levy
U.S. Magistrate Judge

19

WE SO MOVE and agree to abide by the terms of this Order.

Dated:  May 12, 2023

**GLANCY PRONGAY & MURRAY LLP**

*/s/ Garth A. Spencer*
Ex Kano S. Sams II (*pro hac vice*)
Garth A. Spencer (GS-0298)
Charles H. Linehan (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
esams@glancylaw.com
gspencer@glancylaw.com
clinehan@glancylaw.com

Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

*Lead Counsel for Lead Plaintiff Robert Partovy and the Proposed Class*

**PRYOR CASHMAN LLP**

*/s/ Jeffrey Alberts*
Jeffrey Alberts
jalberts@pryorcashman.com
Nicholas George Saady
nsaady@pryorcashman.com
7 Times Square, Suite Level 40
New York, NY 10036
Tel: 212-326-0800
Fax: 212-798-6309

**NEAL, GERBER & EISENBERG LLP**
(Admitted *Pro Hac Vice*)
Scott J. Fisher
sfisher@nge.com
Karl R. Barnickol
kbarnickol@nge.com
Andrew G. May
amay@nge.com
Two North LaSalle Street, Suite 1700
Chicago, IL 60602
Tel: 312-269-8047
Fax: 312-980-0878

*Counsel for Defendants*

## EXHIBIT A

1.  **PRODUCTION LOAD FILES**
    There will be two Load/Unitization files accompanying all productions of ESI:
    - The first will be a Metadata import file, in Concordance-format delimited file with a .DAT file extension that contains the agreed-upon Metadata fields.  For all DAT files: if no foreign language is contained in the production, then UTF-8 text encoding is acceptable; however, if there will be foreign language documents, the text encoding must be in Unicode.
    - The second will be a cross-reference file that contains the corresponding image information [IDX] identifying document breaks.  The acceptable formats for the cross-reference files are .log and .opt.

2.  **IMAGES**
    - Produce documents in Single Page Group IV TIFF black and white files.
    - Image Resolution of at least 300 DPI.
    - If either Party deems the quality of the document produced in TIFF format to be insufficient, the Parties will meet and confer in good faith to determine whether the Producing Party must produce the document as a JPEG file.
    - File Naming Convention:  Match Bates Number of the page.
    - Insert placeholder image for files produced in Native Format (see Paragraph 4.4.).
    - Original document orientation or corrected orientation shall be retained.

3.  **SPECIAL FILE TYPE INSTRUCTIONS**
    - Certain file types shall be produced in Native Format, as specified in Paragraph 4.4.
    - If redactions are required, see production requirements specified in Paragraph 4.4.

4.  **FULL TEXT EXTRACTION/OCR**
    - Where available, produce full extracted text for all file types (Redacted text will not be produced).  Redacted documents should be re-OCRed and the redacted text should be produced.
    - Produce OCR text output for any paper document.
    - Produce OCR text output for any ESI where the source format was an image file (such as JPG, JPEG, GIF, BMP, PCX, PNG, TIF, TIFF etc.) where extracted text cannot be provided, using industry standard OCR technology (Redacted text will not be produced).
    - *Production format*: Single text file for each document, not one text file per page.
    - *File Naming Convention*: Match Beg Bates Number.

5.  **ESI (AND HARD-COPY TO THE EXTENT APPLICABLE) PRODUCTION METADATA FIELDS**
    - Source: Name of Party Producing the document.
    - <u>BegBates</u>:  Beginning Bates Number.
    - <u>EndBates</u>:  Ending Bates Number.
    - <u>BegAttach</u>:  Beginning Bates Number of the first document in a document family range.  Documents that are part of document families, *i.e.*, containing parents and attachments should receive a value.
    - <u>EndAttach</u>:  Ending Bates Number of the last document in attachment range in a document

family range.   Documents that are part of document families, *i.e.*, containing parents or attachments, should receive a value.

- Custodian:  Name of the Custodian of the Document Produced.
- Duplicate Custodians:  Names of all custodians who had a copy of a document that was removed through the de-duplication process, if applicable.
- FileName:  Filename of the original source ESI as stored by the custodian.
- NativeLink:  Path and filename to produced Native Format file (see Paragraph 4.4.)
- EmailSubject:  Subject line extracted from an Email message.
- Title: Title field extracted from the metadata of a non-Email document.
- Author:    Author field extracted from the metadata of a non-Email document. *Parties acknowledge that the Author field may not actually reflect the author of the document.
- From:  From field extracted from an Email message, including both the display name and the SMTP address.
- To:  To or Recipient field extracted from an Email message, including both the display name and the SMTP address.
- Cc:  CC or Carbon Copy field extracted from an Email message, including both the display name and the SMTP address.
- BCC:  BCC or Blind Carbon Copy field extracted from an Email message, including both the display name and the SMTP address.
- DateSent:  Sent date and time of an Email message (mm/dd/yyyy format).
- TimeSent: Sent time of an email message or Instant Message (hh:mm:ss format).
- TimeZoneProcessed: The originating time zone of the document.
- DateCreated:  The origination date of the document. (mm/dd/yyyy format). (*Parties acknowledge that the DateCreated field may not actually reflect the date the file was created, due to the ease of change to that field and the technical definition of the field (*e.g*., the created date and time reflects the date when the file was created in that particular location on the computer or on the other storage device location).
- DateLastModified:  Last modification date and time (mm/dd/yyyy format).
- PageCount: The number of pages of the document, excluding the pages of documents in the same family.
- [MD5/SHA1]HashValue:  MD5 or SHA-1 hash value, but please specify using field name.
- File Extension:  File extension of document (.msg, .doc, .xls, etc.).
- ExtractedText:  File path to Extracted Text/OCR File.
- Confidentiality: "Confidential" or "Highly Confidential," if a document has been so designated under the Stipulated Confidentiality Order; otherwise, blank.
- Attach Count:  Number of attached files.
- Message-ID: The Outlook Message ID assigned by the Outlook mail server, if applicable.
- Reference Chain: The Outlook message "Reference Chain," if applicable.
- Document Type: Descriptor for the type of document. "E-document" for electronic documents not attached to e-mails; "E-mail" for all e-mails; "E-attachment" for files that were attachments to e-mails; and "Physical" for hard copy physical documents that have been scanned and converted to an electronic image.
- Importance: High Importance – indicates priority E-mail.
- Redacted (Y/N): Whether the document contains redactions.
- Embedded Source: The Document Number of the source file from which the embedded file was

2

extracted (if applicable).

**6.    DE-DUPLICATION**

- De-duplication method: Parties may make reasonable efforts to de-duplicate stand-alone documents or entire document families globally using MD5 or SHA-1 Hash value matching.
- Common system files defined by the NIST library (http://www.nsrl.nist.gov/) need not be processed, reviewed or produced.