## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE RECONNAISSANCE ENERGY AFRICA LTD. SECURITIES LITIGATION | Case No. 1:21-cv-06176-NRM-RML<br><br>Honorable Nina R. Morrison |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; (II) CERTIFICATION OF THE U.S. SETTLEMENT CLASS; AND (III) APPROVAL OF NOTICE TO THE U.S. SETTLEMENT CLASS

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ............................................................. 2

II.     NATURE OF THE ACTION AND PROCEDURAL HISTORY ..................................... 4

III.    STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e) .................... 7

IV.     ARGUMENT ............................................................................ 8

        A.      The U.S. Settlement Is Fair, Reasonable, And Adequate In Light Of The
                Rule 23(e)(2) Factors And Remaining *Grinnell* Factors And Warrants
                Preliminary Approval.......................................................... 8

                1.      U.S. Lead Plaintiff And U.S. Lead Counsel Adequately Represented
                        The U.S. Settlement Class ........................................ 8

                2.      The U.S. Settlement Is The Result Of Good Faith Arm's-Length
                        Negotiations By Informed And Experienced Counsel Aware Of The
                        Risks Of The Litigation .......................................... 10

                3.      The U.S. Settlement Is A Fair And Reasonable Result For The U.S.
                        Settlement Class In Light Of The Benefits Of The U.S. Settlement
                        And The Risks Of Continued Litigation................................. 10

                        (a)     Complexity, Expense And Duration Of Litigation ....................... 11

                        (b)     Risks Of Establishing Liability And Damages ........................... 12

                        (c)     Risk Of Maintaining Class Action Status ...................... 14

                        (d)     Range Of Reasonableness In Light Of The Best Possible
                                Recovery And Attendant Risks Of Litigation.............................. 14

                4.      Rule 23(e)(2)(C)......................................................... 15

                5.      The U.S. Settlement Treats All Members Of The U.S. Settlement
                        Class Equitably Relative To Each Other .................................. 17

                6.      Remaining *Grinnell* Factors Weigh In Favor Of Preliminary
                        Approval ................................................................ 17

B.     Certification Of The U.S. Settlement Class For Settlement Purposes Is Appropriate ........................................................................................ 19

      1.     The U.S. Settlement Class Satisfies The Requirements Of Rule 23(a) ........................................................................................ 19

      2.     The U.S. Settlement Class Satisfies The Requirements Of Rule 23(b)(3) ...................................................................................... 21

      3.     The Court Should Appoint U.S. Lead Counsel As Class Counsel .......... 23

C.     The Court Should Approve The Proposed Form And Method Of Notice ........... 23

V.     PROPOSED SCHEDULE OF EVENTS ....................................................................... 24

VI.     CONCLUSION .......................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997).................................................................................. 19, 21, 23

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
    133 S. Ct. 1184 (2013).................................................................................. 21

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,*
    222 F.3d 52 (2d Cir. 2000)............................................................................. 8

*Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.,*
    504 F.3d 229 (2d Cir. 2007).......................................................................... 20

*Chatelain v. Prudential-Bache Sec., Inc.,*
    805 F. Supp. 209 (S.D.N.Y. 1992) ............................................................... 14

*Christine Asia Co., Ltd. v. Yun Ma,*
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................................... 17

*City of Detroit v. Grinnell Corp.,*
    495 F.2d 448 (2d Cir. 1974)......................................................................... 8, 11

*D'Amato v. Deutsche Bank,*
    236 F.3d 78 (2d Cir. 2001)............................................................................. 10

*Denney v. Deutsche Bank AG,*
    443 F.3d 253 (2d Cir. 2006).......................................................................... 19

*Dura Pharms., Inc., v. Broudo,*
    544 U.S. 336 (2005)....................................................................................... 13

*Fishoff v. Coty Inc.,*
    2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) ................................................ 13

*In re "Agent Orange" Prod. Liab. Litig.,*
    597 F. Supp. 740 (E.D.N.Y. 1984) ............................................................... 15

*In re Advanced Battery Techs., Inc. Sec. Litig.,*
    298 F.R.D. 171 (S.D.N.Y. 2014) .................................................................. 24

*In re AOL Time Warner, Inc.,*
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).................................................... 22

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)...................................................................... 17

*In re China Med. Corp. Sec. Litig.*,
   2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ......................................................... 10

*In re Citigroup, Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)...................................................................... 17

*In re Facebook, Inc. IPO Sec. and Derivative Litig.*,
   2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)........................................................... 14

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)....................................................................................... 13

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019)......................................................... 11, 12, 14

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ........................................................ 14

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................ 17

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) .................................................................... 18

*In re Metro. Life Derivative Litig.*,
   935 F. Supp. 286 (S.D.N.Y. 1996) ......................................................................... 10

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
   310 F.R.D. 230 (S.D.N.Y. 2015) ...................................................................... 20, 22

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) .............................................................................. 9

*In re Patriot Nat'l, Inc. Sec. Litig.*,
   828 Fed.Appx. 760 (2d Cir. 2020)................................................................... 8, 9, 21

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................................ 8

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) .............................................................................. 20

*In re Sadia, S.A. Sec. Litig.*,
    269 F.R.D. 298 (S.D.N.Y. 2010) .................................................... 19, 20

*In re Twinlab Corp. Sec. Litig.*,
    187 F. Supp. 2d 80 (E.D.N.Y. 2002) ............................................ 20, 21

*In re Vivendi Universal, S.A. Sec. Litig.*,
    242 F.R.D. 76 (S.D.N.Y. 2007) .................................................... 21, 22

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................... 16

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) .......................................................................... 22

*Roach v. T.L. Cannon Corp.*,
    778 F.3d 401 (2d Cir. 2015) ............................................................. 21

*Shapiro v. JPMorgan Chase & Co.*,
    2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................... 10

*Silverman v. Motorola Sols., Inc.*,
    739 F.3d 956 (7th Cir. 2013) ............................................................. 2

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ................................................................ 9

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982) .............................................................. 19

*Wilson v. LSB Indus., Inc.*,
    2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018) .................................. 21

## STATUTES

15 U.S. Code § 78u–4 ............................................................................. 2

## RULES

Fed. R. Civ. P. 23 ........................................................................... *passim*

Court-appointed Lead Plaintiff Robert Partovy ("U.S. Lead Plaintiff"), on behalf of himself and all others similarly situated, respectfully submits this memorandum in support of his unopposed motion seeking: (i) preliminary approval of the proposed U.S. Settlement set forth in the Global Stipulation and Agreement of Settlement, dated February 27, 2024 (the "Stipulation");[1] (ii) certification of the proposed U.S. Settlement Class;[2] (iii) approval of the form and manner of giving notice of the proposed U.S. Settlement to U.S. Settlement Class Members; and (iv) scheduling of a hearing date ("U.S. Settlement Hearing") at which the Court will consider (a) final approval of the proposed U.S. Settlement and entry of the proposed Judgment Approving Class Action Settlement, (b) the U.S. Plan of Allocation of settlement proceeds, and (c) U.S. Lead Counsel's application for an award of attorneys' fees and reimbursement of U.S. Litigation Expenses.

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, attached as Exhibit 1 to the accompanying Declaration of Garth A. Spencer in Support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement ("Spencer Declaration"). All references to "Ex.__" are to exhibits to the Spencer Declaration.

[2] The U.S. Settlement Class means all persons and entities that purchased or otherwise acquired the publicly traded common stock of Reconnaissance Energy Africa Ltd. ("ReconAfrica") or its predecessor Lund Enterprises Corp. ("Lund") on the U.S. OTC market, between February 28, 2019 and September 7, 2021, both dates inclusive, and were damaged thereby. Excluded from the U.S. Settlement Class are: (a) persons who suffered no compensable losses; and (b)(i) Defendants; (ii) any person who served as a partner, control person, officer and/or director of ReconAfrica and/or its predecessor Lund during the U.S. Settlement Class Period, and members of their Immediate Families; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of ReconAfrica and/or Lund; (iv) any entity in which the Defendants have or had a controlling interest; (v) any trust of which an Individual Defendant is the settler or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Families; (vi) Defendants' liability insurance carriers; and (vii) the legal representatives, heirs, successors, predecessors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof.  Also excluded from the U.S. Settlement Class are any persons and entities who or which submit a request for exclusion from the U.S. Settlement Class that is accepted by the U.S. Court.

## I. PRELIMINARY STATEMENT

The proposed Settlement, which provides for a non-reversionary cash payment of $9,425,000 million Canadian dollars (subject to certain exchange rate adjustments set forth in the Stipulation, the "U.S. Settlement Amount"),[3] in exchange for the resolution of the U.S. Action, represents an excellent result for the U.S. Settlement Class. This is especially true when the Settlement Amount is juxtaposed against the significant hurdles U.S. Lead Plaintiff would have needed to overcome to prevail in this complex securities fraud litigation. In undertaking this litigation, U.S. Lead Counsel faced numerous challenges to establishing liability and damages. For example, whether Defendants' statements about their test well results misleadingly omitted adverse information would likely turn on a risky "battle of the experts" analyzing complex scientific data, with no guarantee that the Court or the jury would find for U.S. Lead Plaintiff over Defendants. The risk of losing was very real, and it was greatly enhanced by the fact that U.S. Lead Plaintiff is litigating against highly skilled defense counsel under the heightened pleading standard and automatic discovery stay provisions of the Private Securities Litigation Reform Act of 1995 ("PSLRA"; 15 U.S. Code § 78u–4). There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing "Defendants prevail outright in many securities suits.").[4]

Despite these risks, U.S. Lead Plaintiff successfully negotiated a settlement resolving all claims in this action against the Defendants in exchange for a cash payment equivalent to

---

[3] The U.S. Settlement Amount equates to $7,068,750 U.S. dollars at an exchange rate of 1 CAD = 0.75 USD.

[4] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

approximately $7 million U.S. dollars for the benefit of the U.S. Settlement Class.[5] This recovery represents approximately 12.4% of the U.S. Settlement Class's $56.3 million U.S. dollar maximum recoverable damages. That is more than ***three times greater*** than the 3.8% median settlement recovery in securities class actions from 2014 to 2023, in cases with comparable estimated damages. *See* Ex. 3. When balanced against the many risks of continued litigation, there can be no doubt that the U.S. Settlement is substantively fair, reasonable, and adequate.

The U.S. Settlement is also the product of a procedurally fair process. It was negotiated by experienced securities class action litigators, after more than two years of hard-fought litigation. By the time the U.S. Settlement was reached, the U.S. Parties and their counsel were well informed about the strengths and weaknesses of the claims and defenses. Indeed, prior to reaching the U.S. Settlement, U.S. Lead Counsel: conducted an extensive investigation into Defendants' allegedly wrongful acts; drafted a comprehensive amended complaint based on this investigation; engaged in substantial briefing opposing a motion to dismiss; engaged in substantial fact discovery, including propounding and responding to document requests and interrogatories, and conducting targeted review and analysis of the more than 80,000 documents (totaling over 540,000 pages) produced by Defendants and third-parties; participated in a private, full-day mediation session under the auspices of a highly-experienced neutral, which included exchanging detailed mediation statements and exhibits; and participated in extensive settlement negotiations.

As discussed in greater detail below, U.S. Lead Plaintiff and U.S. Lead Counsel believe the proposed U.S. Settlement meets the standards for preliminary approval and is in the best

---

[5] ReconAfrica is also named as a defendant in the factually related Canadian Action, pending in the Supreme Court of British Columbia, which is brought on behalf of non-U.S. investors, and which is proposed to be settled simultaneously with this U.S. Action, pursuant to the global Stipulation, subject to approval by the Canadian Court. *See infra* Part II.

interests of the U.S. Settlement Class. Accordingly, U.S. Lead Plaintiff respectfully requests that the Court preliminarily approve the U.S. Settlement.[6]

## II.  NATURE OF THE ACTION AND PROCEDURAL HISTORY

This is a securities class action brought by investors alleging Defendants made materially false and misleading statements or omitted material facts, regarding the results of ReconAfrica's first two test wells in Namibia, and regarding the Company's plans to use hydraulic fracturing or "fracking." U.S. Lead Plaintiff further alleged the price of ReconAfrica's stock was artificially inflated due to Defendants' misleading statements, and declined when the truth was revealed.

Beginning on November 5, 2021, two class action complaints were filed in this Court. By Order dated March 1, 2022, the Court granted a stipulation (ECF No. 20) for the cases to be consolidated and recaptioned as *In re Reconnaissance Energy Africa Ltd. Securities Litigation*; appointed Robert Partovy as Lead Plaintiff, and approved his selection of Glancy Prongay & Murray LLP ("GPM" or "U.S. Lead Counsel") as Lead Counsel for the putative class.

Following U.S. Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (i) reviewing and analyzing (a) ReconAfrica's filings with the Canadian Securities Administrators' SEDAR system, (b) research reports prepared by securities and financial analysts, and news articles about ReconAfrica, and (c) press releases and media reports issued and disseminated by ReconAfrica; (ii) retaining and working with a private investigator who conducted an investigation

---

[6] The global Settlement is contingent upon the U.S. Settlement being approved by this Court, and the Canadian Settlement being approved by the Canadian Court. Thus, pursuant to the Stipulation, the Canadian Plaintiff is seeking approval of the Canadian Settlement in the Canadian Court. For the avoidance of doubt, neither U.S. Lead Plaintiff nor any other Party is asking this Court to make any determination concerning approval of the Canadian Settlement.

that involved, *inter alia*, interviews of former ReconAfrica employees and other sources of relevant information; and (iii) consulting with experts in the field of loss causation and damages.

On April 11, 2022, based on the above investigation, U.S. Lead Plaintiff filed and served his Amended Class Action Complaint for Violations of the Federal Securities Laws ("U.S. Complaint") (ECF No. 31), asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), against ReconAfrica and certain of its directors and officers: James Jay Park, Scot Evans, Ian D. Brown, Carlos Escribano, Shiraz Dhanani, Mark Gerlitz, and James Granath. On August 29, 2022, Defendants served a motion to dismiss the U.S. Complaint (filed on November 29, 2022 pursuant to the Court's bundling rule, *see* ECF Nos. 40-43), which was fully briefed on November 29, 2022 (*see* ECF No. 46). On April 26, 2023, the Court held oral argument and denied Defendants' motion from the bench. On June 9, 2023, Defendants filed their answer. ECF No. 52.

On May 23, 2023, Catherine Bowles ("Canadian Plaintiff") initiated the Canadian Action by filing a Notice of Civil Claim in the Supreme Court of British Columbia, asserting causes of action against ReconAfrica for common law negligent misrepresentation primary market liability, statutory law primary market liability under Section 131 of the British Columbia Securities Act ("BCSA"), common law negligent misrepresentation secondary market liability, and statutory secondary market liability under Section 140.3 of the BCSA. Although brought in different courts under different laws, the Canadian Action and this U.S. Action relate to similar underlying factual allegations concerning ReconAfrica, which form the foundation for both Actions. Generally speaking, the Canadian Action is brought on behalf of the Canadian Settlement Class of non-U.S. investors, whereas the U.S. Settlement Class consists of U.S. investors. In addition to being traded on the U.S. OTC market, ReconAfrica stock is also traded on the Canadian TSXV exchange.

On May 16, 2023, U.S. Lead Plaintiff and the Defendants held their Rule 26(f) conference in this U.S. Action, and thereafter began to conduct discovery. *See* ECF No. 51 (parties' report and discovery plan). Through October 2023, counsel for U.S. Lead Plaintiff and Defendants engaged in substantial fact discovery. U.S. Lead Plaintiff propounded requests for production of documents and interrogatories to Defendants, and responded to Defendants' requests for production and interrogatories. U.S. Lead Plaintiff served eight subpoenas for production of documents on service providers to ReconAfrica, including: (i) Core Laboratories Inc.; (ii) Horizon Well Logging, Inc.; (iii) Worldwide Geochemistry, LLC; (iv) Earthfield Technology, LLC; (v) Sproule Incorporated; (vi) Geomark Research, Ltd.; (vii) Schlumberger Limited (Schlumberger N.V.); and (viii) Netherland Sewell & Associates, Inc. U.S. Lead Counsel conducted a targeted review and analysis of over 80,000 documents (totaling over 540,000 pages) produced by Defendants and third parties.

While actively pursuing fact discovery, U.S. Lead Plaintiff and Defendants agreed to participate in a private mediation with a well-respected mediator of complex cases—Jed Melnick, Esq. of JAMS. U.S. Lead Plaintiff and Defendants exchanged extensive mediation statements and exhibits that addressed, among other things, issues related to liability and damages. The Parties participated in a full-day mediation session on October 18, 2023. At Defendants' request, the Canadian Plaintiff also participated in the mediation. The Parties failed to reach an agreement at the mediation, but the next day, Mr. Melnick recommended in writing that the Parties settle both Actions for a combined $14.5 million Canadian dollar cash payment, subject to certain adjustments, to be allocated among the U.S. Settlement Class and the Canadian Settlement Class. With Mr. Melnick's assistance, the U.S. Lead Plaintiff and the Canadian Plaintiff continued to negotiate concerning the allocation of proposed settlement proceeds between the U.S. Settlement Class and the Canadian Settlement Class. On October 24, 2023, Mr. Melnick recommended that

65% of the proposed $14.5 million CAD settlement amount ($9,425,000 CAD) be allocated to the U.S. Settlement Class, and 35% ($5,075,000 CAD) to the Canadian Settlement Class. On October 25, 2023, U.S. Lead Plaintiff and the Canadian Plaintiff accepted Mr. Melnick's recommendation concerning allocation of settlement proceeds, and all Parties accepted Mr. Melnick's recommendation concerning the $14.5 million CAD total settlement amount.

The Parties then drafted a proposed term sheet to memorialize the global settlement of the Actions and continued to negotiate concerning such terms over the next two months. On December 20, 2023, the Parties executed a finalized term sheet, setting out certain components of the settlement in principle. Over the following two months, the Parties negotiated the terms of the definitive global Stipulation to resolve both this U.S. Action and the Canadian Action, which was finalized and executed by all Parties on February 27, 2024.

## III. STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval and should be approved if the Court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Rule 23(e)(2)—which governs final approval—requires courts to consider the following in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)  have the class representatives and class counsel adequately represented the class;
(B)  was the proposal negotiated at arm's length;
(C)  is the relief provided for the class adequate, taking into account:
    (i)  the costs, risks, and delay of trial and appeal;
    (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)  the terms of any proposed award of attorneys' fees, including timing of payment; and

        (iv)     any agreement required to be identified under Rule 23(e)(3); and

(D)     does the proposal treat class members equitable relative to each other.

These factors "add to, rather than displace, the *Grinnell* factors"[7] traditionally considered by courts within the Second Circuit. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). As set forth below, the proposed U.S. Settlement satisfies the criteria for preliminary approval under the Rule 23(e)(2) factors, as well as the non-duplicative *Grinnell* factors.

## IV.    ARGUMENT

### A.    The U.S. Settlement Is Fair, Reasonable, And Adequate In Light Of The Rule 23(e)(2) Factors And Remaining *Grinnell* Factors And Warrants Preliminary Approval

#### 1.    U.S. Lead Plaintiff And U.S. Lead Counsel Adequately Represented The U.S. Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'" *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 Fed.Appx. 760, 764 (2d Cir. 2020) (citing cases); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are

---

[7] The *Grinnell* factors are: (1) complexity, expense and likely duration of the litigation; (2) reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class through the trial; (7) ability of the defendants to withstand a greater judgment; (8) range of reasonableness of the settlement fund in light of the best possible recovery; and (9) range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).

qualified, experienced and able to conduct the litigation.").[8]

First, U.S. Lead Plaintiff's claims are typical of, and coextensive with, the claims of the U.S. Settlement Class, and he has no antagonistic interests. U.S. Lead Plaintiff suffered substantial losses as a result of Defendants' allegedly wrongful conduct, and his interest in obtaining the largest possible recovery is, therefore, aligned with other U.S. Settlement Class Members. *See Patriot*, 828 Fed. Appx. at 764 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member."). U.S. Lead Plaintiff also diligently oversaw the case and communicated with U.S. Lead Counsel regularly to discuss case developments, including settlement.

Second, U.S. Lead Plaintiff retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Ex. 2 (GPM firm résumé). U.S. Lead Counsel adequately represented the U.S. Settlement Class by, among other things: (a) conducting an extensive investigation and drafting the 88-page (335 paragraph) U.S. Complaint based on that investigation; (b) successfully opposing a motion to dismiss despite the PSLRA's heightened pleading standard and automatic stay of discovery; (c) engaging in significant discovery; (d) participating in the extensive settlement negotiations; and (e) drafting the Stipulation and supporting documents. *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts have consistently given "great weight. . .to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

---

[8] *Accord Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106-07 (2d Cir. 2005) ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.").

### 2. The U.S. Settlement Is The Result Of Good Faith Arm's-Length Negotiations By Informed And Experienced Counsel Aware Of The Risks Of The Litigation

Rule 23(e)(2)(B) evaluates whether the proposed settlement "was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B). Here, before the Parties engaged in mediation, discovery was well underway, U.S. Lead Plaintiff had analyzed substantial evidence from Defendants and third parties, and the U.S. Settlement was negotiated at arm's-length by capable and experienced counsel, all of which supports the conclusion that the U.S. Settlement is fair and was achieved free of collusion. *Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at \*7 (S.D.N.Y. Mar. 24, 2014) ("highly experienced counsel on both sides, all with a strong understanding of the strengths and weaknesses of each party's respective potential claims and defenses, vigorously negotiated the Settlement at arm's-length"); *see also In re Metro. Life Derivative Litig.*, 935 F. Supp. 286, 294 (S.D.N.Y. 1996) ("Counsel have thoroughly investigated and evaluated plaintiffs' claims. Accordingly, their recommendation for approval of the Proposed Settlement is entitled to considerable weight."). In addition, the involvement of Mr. Melnick—a mediator with substantial experience mediating complex securities class actions—supports the conclusion that the U.S. Settlement is fair and was achieved free of collusion. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at \*4 (C.D. Cal. Jan. 7, 2014) (finding settlement reached as a result of mediation before Mr. Melnick weighs in favor of approval).

### 3. The U.S. Settlement Is A Fair And Reasonable Result For The U.S. Settlement Class In Light Of The Benefits Of The U.S. Settlement And The Risks Of Continued Litigation

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate,

taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. FED. R. CIV. P. 23(e)(2)(C).[9] As discussed below, each supports preliminary approval.

### (a) Complexity, Expense And Duration Of Litigation

This U.S. Action involved alleged violations of the federal securities laws, and U.S. Lead Plaintiff and U.S. Lead Counsel believe the claims asserted against Defendants have merit. They acknowledge, however, the expense and duration of continued proceedings necessary to pursue their claims against Defendants through trial and appeals, as well as the substantial risks they would face in establishing liability, loss causation, and damages (as discussed below). Assuming U.S. Lead Plaintiff's claims were certified under Rule 23 (and not successfully reversed on a Rule 23(f) interlocutory appeal), and survived summary judgment, litigating the U.S. Action through trial and post-trial appeals would have undoubtedly been a long and expensive endeavor. Were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the U.S. Settlement Class. *GSE*, 414 F. Supp. 3d at 693 ("even if plaintiffs were to prevail at trial, posttrial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all."). By contrast, the U.S. Settlement provides an immediate and substantial recovery for the U.S. Settlement Class, without exposing the U.S. Settlement Class to the risk, expense, and delay of continued litigation.

---

[9] Rule 23(e)(2)(C)(i) essentially incorporates six of the *Grinnell* factors: complexity, expense, and likely duration of the litigation (first factor); risks of establishing liability and damages (fourth and fifth factors); risks of maintaining class action status through trial (sixth factor); and range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors). *See Grinnell*, 495 F.2d at 463; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

### (b) Risks Of Establishing Liability And Damages

In considering these factors, "a court should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation." *GSE*, 414 F. Supp. 3d at 694. While U.S. Lead Counsel believes U.S. Lead Plaintiff's claims have merit, they also recognize substantial obstacles to proving liability and class-wide damages. When compared to the certainty of the significant benefit conferred by the U.S. Settlement, these risks militate against further litigation and support preliminary approval.

**Establishing Liability:** This Action is premised on Defendants' allegedly misleading statements and omissions concerning the results of ReconAfrica's first two test wells in Namibia, and regarding the Company's plans to use hydraulic fracturing. While U.S. Lead Plaintiff was able to successfully survive the pleading stage, he still needed to *prove* his case. U.S. Lead Plaintiff strongly believes the evidence supports his version of events, however, a jury may nevertheless agree with Defendants' narrative of the case. Indeed, Defendants forcefully argued in their motion to dismiss, and would undoubtedly continue to assert at summary judgment and/or trial, that Defendants made no actionable misrepresentations under the federal securities laws. More specifically, Defendants argued that they fully disclosed to investors the risky nature of oil and gas exploration, and the uncertainty surrounding the regulatory approval process. Defendants further argued that their statements were not misleading because they concerned uncertain future events, such as whether oil or gas would be discovered, and whether Namibia would authorize ReconAfrica to extract any discovered resources. Defendants also argued that Namibia's laws and regulations applicable to fracking were public information, which Defendants had no duty to disclose. And, Defendants argued that they fully and accurately disclosed results from their test wells as the data became available.

Defendants also contested scienter. While U.S. Lead Plaintiff believes that he could establish scienter after the development of the evidentiary record, he also recognizes the difficulties in proving scienter. *See Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("the element of scienter is often the most difficult and controversial aspect of a securities fraud claim.") *aff'd*, 634 F.3d 647 (2d Cir. 2011). For example, Defendants argued that there was no information pled to show that any Individual Defendant knew any allegedly concealed facts, and that Defendants had no plausible motive to mislead investors.

**Loss Causation and Damages:** Even if U.S. Lead Plaintiff established liability, he faced significant risks in proving loss causation and damages. *See Dura Pharms., Inc., v. Broudo*, 544 U.S. 336, 345-46 (2005) (plaintiffs bear "the burden of proving that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) ("It is well-established that plaintiffs alleging claims under Section 10(b) of the '34 Act must prove loss causation."). For example, Defendants argued that loss causation was lacking, because ReconAfrica experienced a long, gradual stock price decline not caused by the revelation of any fraud. Had Defendants prevailed on this loss causation argument, potential class-wide damages could have been greatly reduced or even altogether eliminated.

Of course, in order to resolve all disputed issues regarding damages and loss causation, the Parties would have relied on expert testimony. For example, in order to prove that Defendants' statements about ReconAfrica's test well results misleadingly omitted adverse information, U.S. Lead Plaintiff would have needed to retain a testifying expert in the field of oil and gas exploration to analyze complex scientific data from those wells. This creates further litigation risk because U.S. Lead Plaintiff could not be certain whether a jury would accept the views of his experts or of

the well-qualified experts that Defendants would no doubt be able to present at trial. *See In re Facebook, Inc. IPO Sec. and Derivative Litig.*, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015) ("[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount Plaintiffs' losses. Under such circumstances, a settlement is generally favored over continued litigation."); *In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009) ("If there is anything in the world that is uncertain when a case like [a securities class action] is taken to trial, it is what the jury will come up with as a number for damages.").

### (c)     Risk Of Maintaining Class Action Status

While U.S. Lead Plaintiff and U.S. Lead Counsel are confident that the U.S. Settlement Class meets the requirements for certification, *see* Sec. IV.B., *infra*, a class has not yet been certified, and U.S. Lead Plaintiff is aware that there is a risk the Court could disagree. Even if the Court were to certify a class, there is always a risk that it could be decertified at a later stage in the proceedings. *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification."). Thus, the risks and uncertainty surrounding certification also support preliminary approval of the U.S. Settlement, as Defendants undoubtedly would have challenged class certification. *See GSE*, 414 F. Supp. 3d at 694 ("Although the risk of maintaining a class through trial is present in [every] class action … this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated.").

### (d)     Range Of Reasonableness In Light Of The Best Possible Recovery And Attendant Risks Of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and

weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987). Here, the proposed U.S. Settlement provides a cash payment of approximately $7 million U.S. dollars for the benefit of the U.S. Settlement Class. This is a highly favorable result in light of the significant risks of continued litigation. U.S. Lead Plaintiff's damages expert estimates that if U.S. Lead Plaintiff had fully prevailed on all his claims at summary judgment and after a jury trial, if the Court certified the same class period as the U.S. Settlement Class Period, and if the Court and jury accepted U.S. Lead Plaintiff's damages theory—*i.e.*, U.S. Lead Plaintiff's *best case scenario*—the total *maximum* damages *potentially* available in this U.S. Action would be approximately $56.3 million U.S. dollars. Therefore, the U.S. Settlement represents a recovery of approximately 12.4%, which is *more than three times greater* than the 3.8% median settlement recovery in securities class actions from 2014 to 2023, in cases with comparable estimated damages. *See* Ex. 3 (Svetlana Starykh and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024 at p. 25 (Fig. 21)).

### 4.      Rule 23(e)(2)(C)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors either supports preliminary approval of the U.S. Settlement or is neutral and does not suggest any basis for inadequacy.

**Rule 23(e)(2)(C)(ii):** The method for processing U.S. Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and distributing the U.S. Net Settlement Fund. The U.S. Claims Administrator will process claims, under U.S. Lead Counsel's guidance, allow U.S. Claimants an opportunity to cure claim deficiencies or request the Court to review their claim denial, and mail Authorized U.S. Claimants their *pro rata* share of the U.S. Net Settlement Fund (per the U.S. Plan of Allocation), after Court approval. This proposed claims processing method is standard in securities class action settlements. It has been long found to be effective, as well as necessary as neither U.S. Lead Plaintiff nor Defendants possess the individual investor trading data required to distribute the U.S. Net Settlement Fund on a claims-free basis.

**Rule 23(e)(2)(C)(iii):** As disclosed in the U.S. Postcard Notice and U.S. Notice, U.S. Lead Counsel will be applying for a percentage of the common fund fee award, in an amount not to exceed 33⅓%, to compensate them for the services they rendered on behalf of the U.S. Settlement Class. A proposed attorneys' fee of up to 33⅓% of the U.S. Settlement Fund (which, by definition, includes interest earned on the U.S. Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("Petitioners' request [for 33⅓% of the Class Settlement Fund] falls comfortably within the range of fees typically awarded in securities class actions."). More importantly, approval of the requested attorneys' fees is separate from approval of the U.S. Settlement, and the U.S. Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation, ¶17.

**Rule 23(e)(2)(C)(iv):** The Parties entered into a confidential agreement establishing certain conditions under which Defendants may terminate the U.S. Settlement if members of the U.S.

Settlement Class and the Canadian Settlement Class in excess of a certain threshold request exclusion from the U.S. Settlement or the Canadian Settlement, respectively. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019).

5.      **The U.S. Settlement Treats All Members Of The U.S. Settlement Class Equitably Relative To Each Other**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The U.S. Settlement easily satisfies this standard. Under the proposed U.S. Plan of Allocation, each Authorized U.S. Claimant will receive his, her, or its *pro rata* share of the U.S. Net Settlement Fund. Specifically, an Authorized U.S. Claimant's *pro rata* share shall be the Authorized U.S. Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized U.S. Claimants, multiplied by the total amount in the U.S. Net Settlement Fund. Courts have repeatedly approved similar plans. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

6.      **Remaining *Grinnell* Factors Weigh In Favor Of Preliminary Approval**

**The Stage of the Proceedings and the Amount of Discovery Completed:** This factor examines "whether the parties had adequate information about their claims such that their counsel can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). Here, at the time the U.S. Settlement was reached, U.S. Lead Plaintiff had successfully opposed Defendants' motion to dismiss, and engaged in substantial discovery, which included: (i)

propounding requests for production of documents and interrogatories, and responding to Defendants' requests for production and interrogatories; (ii) serving eight subpoenas for production of documents on service providers to ReconAfrica;[10] and (iii) conducting a targeted review and analysis of over 80,000 documents (totaling over 540,000 pages) produced by Defendants and third parties. Thus, U.S. Lead Plaintiff and his counsel had sufficient information to evaluate the strengths and weaknesses of the case at the time of settlement. There can be no question that this factor supports preliminary approval.

**The Ability of Defendants to Withstand a Greater Judgment:** "Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where the other *Grinnell* factors weigh heavily in favor of settlement approval." *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010). Here, even if U.S. Lead Plaintiff overcame all the obstacles to prevailing through trial and appeals, collecting a large judgment would still not be a foregone conclusion. While ReconAfrica has Directors and Officers insurance policies that may have contributed toward a judgment in this U.S. Action, those policies were wasting and may not have been sufficient to cover the full amount of a judgment. Moreover, ReconAfrica's most recent published financial statements show the Company operating at a loss, with limited cash on hand. ReconAfrica has yet to announce a commercially viable oil or gas discovery, and its stock price continues to trade substantially below the highs reached during the U.S. Settlement Class Period. Given the significant time required to get to trial and resolve all appeals, U.S. Lead Plaintiff would have no guarantee that ReconAfrica's financial condition would not further deteriorate, potentially jeopardizing the ability to collect any significant recovery for

---

[10] These service providers were Core Laboratories Inc., Horizon Well Logging, Inc., Worldwide Geochemistry, LLC, Earthfield Technology, LLC, Sproule Incorporated, Geomark Research, Ltd., Schlumberger Limited (Schlumberger N.V.), and Netherland Sewell & Associates, Inc.

the U.S. Settlement Class. Under these circumstances, the ability to pay weighs in favor of preliminary approval.

**B.** **Certification Of The U.S. Settlement Class For Settlement Purposes Is Appropriate**

The Second Circuit has long acknowledged the propriety of certifying a class solely for purposes of a class action settlement. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982). A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b). *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). The manageability concerns of Rule 23(b)(3), however, are not at issue for a settlement class. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997) ("Whether trial would present intractable management problems. . .is not a consideration when settlement-only certification is requested."). As demonstrated below, the proposed U.S. Settlement Class satisfies all the applicable requirements of Rule 23(a) and 23(b)(3).

**1.** **The U.S. Settlement Class Satisfies The Requirements Of Rule 23(a)**

**Numerosity:** The first element of the four-part threshold for class certification requires that "the class [be] so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010).

Here, the U.S. Settlement Class is comprised of purchasers of publicly traded ReconAfrica Securities on the U.S. OTC market. During the U.S. Settlement Class Period, ReconAfrica Securities were actively traded on the OTC market, with millions of shares traded in that period. Thus, while the precise number of U.S. Settlement Class Members cannot be identified, it is likely

to be in the thousands. Accordingly, the U.S. Settlement Class is sufficiently numerous that Rule 23(a)(1) is satisfied. *See id.* ("Sufficient numerosity can be presumed at a level of forty members or more.").

**Common Questions**:  Securities fraud cases like this one easily meet the commonality requirement, which is satisfied where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012). Here, questions of law and fact regarding U.S. Lead Plaintiff's Exchange Act claims will be common to the U.S. Settlement Class, including whether Defendants' representations to the investing public during the U.S. Settlement Class Period were "materially misleading." These questions are susceptible to common answers because their resolution does not differ based on the plaintiff's identity. Because these questions of law and fact are common to all members of the U.S. Settlement Class, the commonality requirement of Rule 23(a)(2) is met. *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015).

**Typicality**: Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007). U.S. Lead Plaintiff's claims are typical of the U.S. Settlement Class because they are based on the same alleged misrepresentations and omissions. Thus, any U.S. Settlement Class Member's claim arising from these misrepresentations and omissions will necessarily rely on the same course of events. *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (finding typicality where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

**Adequacy:** As explained in Sec. IV.A.1., *supra*, U.S. Lead Plaintiff is an adequate representative. First, U.S. Lead Plaintiff and U.S. Settlement Class Members purchased publicly traded ReconAfrica Securities during the U.S. Settlement Class Period, and they were all injured by Defendants' allegedly materially false statements and omissions. U.S. Lead Plaintiff is highly motivated to recover as much as possible in damages for the U.S. Settlement Class in light of his significant losses. *Patriot*, 828 Fed.Appx. at 764. If U.S. Lead Plaintiff was to prove his claims at trial, he would also prove the U.S. Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).

Second, U.S. Lead Plaintiff demonstrated his commitment to this litigation by retaining qualified counsel. *See Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *18 (S.D.N.Y. Aug. 13, 2018) (appointing GPM as class counsel and noting that "GPM has had extensive experience serving as lead or co-lead counsel in class action securities litigation.").

## 2.      The U.S. Settlement Class Satisfies The Requirements Of Rule 23(b)(3)

**Common Questions Predominate:** Predominance exists where the questions that are capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The Supreme Court has noted that predominance is a "test readily met in certain cases alleging . . . securities fraud." *Amchem*, 521 U.S. at 625.

Here, there are common questions of law and fact involving violations of the federal securities laws based on a common course of conduct directed at the entire U.S. Settlement Class, and these questions predominate over any individualized questions that may exist. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 90 (S.D.N.Y. 2007) ("The common issues in

this action include whether defendants issued materially false and misleading statements . . . , scienter, reliance, and causation. All plaintiffs will rely on the same or substantially similar documents, statements, and legal theories to prove the defendants' liability."). Predominance has, therefore, been satisfied. *See id.*; *see also In re AOL Time Warner, Inc.*, 2006 WL 903236, at *5 (S.D.N.Y. Apr. 6, 2006) (predominance readily met because "[a]llegations of [d]efendants' misrepresentations and the improper inflation of AOL's accounting revenues underlie the factual and legal claims of every Class Member").

**Class Action Is Superior:** Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by...class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3). Securities suits easily satisfy Rule 23(b)(3)'s superiority requirement because "the alternatives are either no recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *MF Glob.*, 310 F.R.D. at 239.

Here, there is no evidence that putative class members desire to bring separate individual actions. Indeed, without class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). Furthermore, it is desirable to concentrate the claims in this Court as it is already familiar with the factual and legal issues in the case. Finally, because this is a request for class certification for settlement

purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

### 3. The Court Should Appoint U.S. Lead Counsel As Class Counsel

A court that certifies a class must also appoint class counsel. *See* FED. R. CIV. P. 23(g). The Rule directs the Court to consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A).

GPM was appointed Lead Counsel in this U.S. Action in March 2022, and since that time the firm has devoted substantial time, effort, and resources to identifying, investigating, litigating and settling the claims in this matter. Moreover, as explained in Sec. IV.A.1., *supra*, GPM has substantial experienced prosecuting securities class actions. For these reasons, among others, U.S. Lead Plaintiff respectfully requests that the Court appoint GPM to serve as Class Counsel for the U.S. Settlement Class.

### C. The Court Should Approve The Proposed Form And Method Of Notice

As outlined in the proposed U.S. Preliminary Approval Order, if the Court grants preliminary approval, the U.S. Claims Administrator will mail, by first-class mail, individual copies of the U.S. Postcard Notice (Ex. A-4 to the Stipulation) to all potential U.S. Settlement Class Members who can be identified with reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock. Contemporaneously with the mailing of the U.S. Postcard Notice, copies of the U.S. Notice (Ex. A-1 to the Stipulation) and the U.S. Claim Form (Ex. A-2 to the Stipulation) will be posted on a website to be developed

for the U.S. Settlement. From this website, potential U.S. Settlement Class Members will be able to download copies of the U.S. Notice and U.S. Claim Form and submit claims online.[11] The U.S. Notice will advise U.S. Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the U.S. Settlement; and (iii) information regarding U.S. Lead Counsel's application for attorneys' fees and expenses. The U.S. Notice also will provide specifics on the date, time and place of the U.S. Settlement Hearing and set forth the procedures for objecting to the U.S. Settlement, the proposed U.S. Plan of Allocation, and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the U.S. Settlement Class. In addition to mailing the U.S. Postcard Notice, the U.S. Summary Notice (Ex. A-3 to the Stipulation) will be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

It is "more than sufficient" to use "a combination of a mailed post card [sic] directing class members to a more detailed online notice." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 182 n.3 (S.D.N.Y. 2014) (citing cases). Accordingly, U.S. Lead Plaintiff respectfully submits that the proposed notice and related procedures are appropriate and should be approved.

## V.    PROPOSED SCHEDULE OF EVENTS

U.S. Lead Plaintiff respectfully proposes the schedule set forth below for U.S. Settlement-related events. The timing of events is determined by the date the U.S. Preliminary Approval Order is entered and the date the U.S. Settlement Hearing is scheduled. If the Court agrees with the proposed schedule, U.S. Lead Plaintiff requests that Court schedule the U.S. Settlement Hearing for a date at least 120 calendar days after entry of the U.S. Preliminary Approval Order, or at the Court's convenience thereafter.

---

[11] Upon request, the U.S. Claims Administrator will also mail copies of the U.S. Notice and/or U.S. Claim Form.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Postcard Notice to Settlement Class Members (which date shall be the "Notice Date") | Not later than 20 business days after entry of Preliminary Approval Order (Prelim. App. Order ¶7(b)) |
| Publication of U.S. Summary Notice. | No later than 10 business days after U.S. Notice Date. (Prelim. App. Order ¶7(d)) |
| Deadline for filing U.S. Claim Form. | No later than 120 calendar days after U.S. Notice Date. (Prelim. App. Order ¶10) |
| Date for U.S. Lead Plaintiff to file papers in support of the U.S. Settlement, the U.S. Plan of Allocation, and for application for attorneys' fees and reimbursement of expenses. | 35 calendar days prior to the U.S. Settlement Hearing (Prelim. App. Order ¶26) |
| Deadline for requests for exclusion and objections. | Received no later than 21 calendar days prior to U.S. Settlement Hearing (Prelim. App. Order ¶¶13, 16) |
| Date for U.S. Lead Plaintiff to file reply papers in support of the U.S. Settlement, the U.S. Plan of Allocation, and application for attorneys' fees and reimbursement of expenses. | 7 calendar days prior to the U.S. Settlement Hearing. (Prelim. App. Order ¶26) |
| U.S. Settlement Hearing. | At least 120 days after the entry of U.S. Prelim. App. Order [12] |

## VI.    CONCLUSION

For the foregoing reasons, U.S. Lead Plaintiff respectfully requests that the Court grant the requested relief.

---

[12] The proposed schedule provides U.S. Settlement Class Members with sufficient time to file claims, request exclusion from or submit objections to the U.S. Settlement, and for U.S. Lead Plaintiff to file his motion papers.

Dated: February 27, 2024

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Garth A. Spencer*

Ex Kano S. Sams II (*pro hac vice*)
Garth A. Spencer (GS-0298)
Charles H. Linehan (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
esams@glancylaw.com
gspencer@glancylaw.com
clinehan@glancylaw.com

Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

*Counsel for U.S. Lead Plaintiff Robert Partovy and the Proposed U.S. Settlement Class*

**PROOF OF SERVICE**

I hereby certify that on this 27th day of February 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Garth Spencer*
Garth Spencer