**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

IN RE RECONNAISSANCE ENERGY
AFRICA LTD. SECURITIES
LITIGATION

Case No. 1:21-cv-06176-NRM-RML

Honorable Nina R. Morrison

**MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S**
**MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF LITIGATION EXPENSES**

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT .................................................................................. 1

II.    ARGUMENT ......................................................................................................... 4

    A.    U.S. Lead Counsel Is Entitled To An Award Of Attorneys' Fees And Expenses From The Common Fund .................................................................................. 4

    B.    The Court Should Award A Reasonable Percentage Of The Common Fund ......... 5

    C.    The Requested Attorneys' Fees Are Reasonable .................................................... 7

        1.    The Requested Attorneys' Fees Are Reasonable Under The Percentage-of-the-Fund Method ...................................................................................... 7

        2.    The Lodestar "Cross-Check" Strongly Supports The Reasonableness Of The Requested Fee ............................................................................................. 9

    D.    Factors Considered By Courts In The Second Circuit Confirm That The Requested Fee Is Fair And Reasonable ........................................................................................ 11

        1.    Time And Labor Expended Support The Requested Fee .......................... 11

        2.    The Risks Of Litigation Support The Requested Fee ............................... 13

        3.    The Magnitude And Complexity Of The Action Support The Fee .......... 22

        4.    The Quality Of Representation Supports The Requested Fee ................... 23

        5.    The Requested Fee In Relation To The Settlement Amount ..................... 25

        6.    Public Policy Considerations Support The Requested Fee ........................ 25

    E.    U.S. Lead Counsel's Expenses Should Be Reimbursed ....................................... 26

    F.    U.S. Lead Plaintiff Should Be Granted A PSLRA Award .................................. 26

III.    CONCLUSION .................................................................................................... 28

## TABLE OF AUTHORITIES

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
   572 F.3d 221 (5th Cir. 2009) ................................................................................................ 2

*Anwar v. Fairfield Greenwich Ltd.*,
   2012 WL 1981505 (S.D.N.Y. June 1, 2012) .......................................................................... 8

*Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc.*,
   77 F.4th 74 (2d Cir. 2023) .................................................................................................. 20

*Asare v. Change Group of New York, Inc.*,
   2013 WL 6144764 (S.D.N.Y. Nov. 18, 2013) ...................................................................... 10

*Athale v. Sinotech Energy Ltd.*,
   2013 WL 11310686 (S.D.N.Y. Sept. 4, 2013) ................................................................. 6, 10

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ............................................................................................................ 19

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
   2019 WL 4193376 (S.D. Ind. Sept. 4, 2019) ........................................................................ 4

*Bellifemine v. Sanofi-Aventis U.S. LLC*,
   2010 WL 3119374 (S.D.N.Y. Aug. 6, 2010) .......................................................................... 7

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) .............................................................................................................. 4

*Burks v. Gotham Process, Inc.*,
   2023 WL 8440866 (E.D.N.Y. Nov. 16, 2023) ........................................................................ 7

*Burns v. Falconstor Software, Inc.*,
   2014 WL 12917621 (E.D.N.Y. Apr. 10, 2014) .................................................................... 10

*Christine Asia Co., Ltd. v. Yun Ma*,
   2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ...................................................................... 27

*City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*,
   2020 WL 7413926 (S.D.N.Y. Dec. 17, 2020) ................................................................ 15, 26

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ........................................................................................... 14, 16

*City of Providence v. Aeropostale, Inc.*,
    2014 WL 1883494 (S.D.N.Y. May 9, 2014) ................................................................. 23

*Cornwell v. Credit Suisse Grp.*,
    2011 WL 13263367 (S.D.N.Y. July 18, 2011) ........................................................... 10

*Cullen v. Whitman Med. Corp.*,
    197 F.R.D. 136 (E.D. Pa. 2000) ................................................................................... 21

*Dartell v. Tibet Pharma., Inc.*,
    2017 WL 2815073 (D.N.J. June 29, 2017) ................................................................. 20

*Davis v. J.P. Morgan Chase & Co.*,
    827 F. Supp. 2d 172 (W.D.N.Y. 2011) .................................................................. 6, 10

*Edmonds v. U.S.*,
    658 F. Supp. 1126 (D.S.C. 1987) ................................................................................ 24

*Glickenhaus & Co. v. Household Int'l, Inc.*,
    787 F.3d 408 (7th Cir. 2015) ......................................................................................... 3

*Goldberger v. Integrated Res., Inc.*,
    209 F.3d 43 (2d Cir. 2000) ................................................................................. *passim*

*Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*,
    594 U.S. 113 (2021) ...................................................................................................... 19

*Gross v. GFI Group, Inc.*,
    784 F. App'x. 27 (2d Cir. Sept. 13 2019) .................................................................. 15

*Guevoura Fund Ltd. v. Sillerman*,
    2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ..................................................... 10, 27

*Harris v. AmTrust Financial Services, Inc.*,
    135 F.Supp.3d 155 (S.D.N.Y. 2015) .......................................................................... 17

*Hicks v. Morgan Stanley & Co.*,
    2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................................ 5, 7

*In re Akazoo S.A. Sec. Litig.*,
    2021 WL 4316717 (E.D.N.Y. Sept. 10, 2021) ............................................................ 8

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
    2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................................................ 22

*In re Apple Computer Sec. Litig.*,
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ................................................................ 3

*In re Auto. Refinishing Paint Antitrust Litig.*,
  2008 WL 63269 (E.D. Pa. Jan. 3, 2008) ...................................................................... 16

*In re Bank of Am. Corp, Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
  772 F.3d 125 (2d Cir. 2014)......................................................................................... 27

*In re Bisys Sec. Litig.*,
  2007 WL 2049726 (S.D.N.Y July 16, 2007) ............................................................... 10

*In re Bristol-Myers Squibb Sec. Litig.*,
  361 F. Supp. 2d 229 (S.D.N.Y. 2005).......................................................................... 7

*In re Colgate-Palmolive Co. ERISA Litig.*,
  36 F. Supp. 3d 344 (S.D.N.Y. 2014)............................................................................ 10

*In re Comverse Tech., Inc. Sec. Litig.*,
  2010 WL 2653354 (E.D.N.Y. June 24, 2010) ..................................................... 9, 14, 25

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
  80 F. Supp. 3d 838 (N.D. Ill. 2015) ............................................................................ 14

*In re Deutsche Telekom AG Sec. Litig.*,
  2005 WL 7984326 (S.D.N.Y. June 14, 2005) ............................................................. 10

*In re Facebook, Inc. IPO Sec. & Deriv. Litig.*,
  2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)................................................................. 13

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010)............................................................ *passim*

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ................................................................................. 15

*In re Global Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ......................................................................... 9, 14, 26

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .............................................................. 9

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
  194 F.R.D. 166 (E.D. Pa. 2000).................................................................................... 22

iv

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003)..................................................................... 26

*In re Interpublic Sec. Litig.*,
  2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004) ........................................................ 10

*In re Lloyd's Am. Trust Fund Litig.*,
  2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002) ........................................................ 8

*In re Lottery.com, Inc. Sec. Litig.*,
  2024 WL 454298 (S.D.N.Y. Feb. 6, 2024)............................................................... 2

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
  2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ....................................................... 27

*In re Marsh ERISA Litig.*,
  265 F.R.D. 128 (S.D.N.Y. 2010) ........................................................................... 22

*In re NASDAQ Market-Makers Antrust. Litig.*,
  187 F.R.D. 465 (S.D.N.Y. 1998) ........................................................................... 14

*In re Ocean Power Tech., Inc., Sec. Litig.*,
  2016 WL 6778218 (D.N.J. Nov. 15, 2016) ............................................................. 3

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  985 F. Supp. 410 (S.D.N.Y. 1997)......................................................................... 15

*In re Qudian Inc. Sec. Litig.*,
  2021 WL 2328437 (S.D.N.Y. June 8, 2021) ...................................................... 8, 27

*In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*,
  2020 WL 6193857 (E.D.N.Y. Oct. 7, 2020)............................................................ 8

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005).................................................................................... 6

*In re Schering-Plough Corp. Enhance Sec. Litig.*,
  2013 WL 5505744 (D.N.J. Oct. 1, 2013)............................................................... 18

*In re Signet Jewelers Limited Sec. Litig.*,
  2020 WL 4196468 (S.D.N.Y. July 21, 2020) .............................................. 24, 26, 27

*In re Sumitomo Copper Litig.*,
  74 F.Supp.2d 393 (S.D.N.Y. 1999)........................................................................ 18

*In re Sumitomo Copper Litig.*,
    189 F.R.D. 274 (S.D.N.Y. 1999) ...................................................................... 14

*In re Telik, Inc. Sec. Litig.*,
    576 F. Supp. 2d 570 (S.D.N.Y. 2008) ........................................................... 3, 6

*In re Tenaris S.A. Sec. Litig.*,
    2024 WL 1719632 (E.D.N.Y. Apr. 22, 2024) .............................................. 8, 9

*In re Teva Sec. Litig.*,
    2021 WL 872156 (D. Conn. Mar. 9, 2021) ...................................................... 19

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ..................................... *passim*

*In re Vivendi Universal, S.A. Sec. Litig.*,
    765 F. Supp. 2d 512 (S.D.N.Y. 2011) ............................................................. 20

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ............................................................. 18

*In re XL Fleet Corp. Sec. Litig.*,
    2024 WL 1884483 (S.D.N.Y. Apr. 30, 2024) ................................................. 27

*Johnson v. Brennan*,
    2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) .................................................. 6

*Kelwin Inkwel, LLC v. PNC Merchant Services Company, L.P.*,
    2022 WL 3127633 (E.D.N.Y. Apr. 12, 2022) ............................................ 7, 10

*La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*,
    2009 WL 4730185 (D.N.J. Dec. 4, 2009) ....................................................... 22

*Lea v. Tal Educ. Grp.*,
    2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ............................................. 9, 22

*Leach v. NBC Universal Media, LLC*,
    2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017) ............................................... 11

*LeBlanc-Sternberg v. Fletcher*,
    143 F.3d 748 (2d Cir. 1998) .............................................................................. 9

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ............................................... *passim*

*Meredith Corp. v. SESAC, LLC*,
    87 F. Supp. 3d 650 (S.D.N.Y. 2015) .................................................................... 17

*Mikhlin v. Oasmia Pharm AB*,
    2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) ............................................................ 7

*Mild v. PPG Indus., Inc.*,
    2019 WL 3345714 ................................................................................................ 24

*Mills v. Elec. Auto-Lite Co.*,
    396 U.S. 375 (1970) ................................................................................................ 5

*Missouri v. Jenkins*,
    491 U.S. 274 (1989) ................................................................................................ 9

*Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*,
    2009 WL 5851465 (S.D.N.Y. Mar. 31, 2009) ........................................................ 8

*Monzon v. 103W77 Partners, LLC*,
    2015 WL 993038 (S.D.N.Y. Mar. 5, 2015) ............................................................. 5

*Morrison v. Nat'l Australia Bank Ltd.*,
    561 U.S. 247 (2010) .............................................................................................. 20

*Nichols v. Noom, Inc.*,
    2022 WL 2705354 (S.D.N.Y. July 12, 2022) .......................................................... 7

*P. Van Hove BVBA v. Universal Travel Group, Inc.*,
    2017 WL 2734714 (D.N.J. June 26, 2017) ...................................................... 20, 23

*Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*,
    2012 WL 3746220 (E.D.N.Y. Aug. 27, 2012) ...................................................... 23

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) .............................................................................. 3

*Savoie v. Merchants Bank*,
    166 F.3d 456 (2d Cir. 1999) .................................................................................... 9

*Schwartz v. TXU Corp.*,
    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) .................................................. 18, 25

*Serfaty v. Int'l Automated Systems, Inc.*,
    180 F.R.D. 418 .................................................................................................... 19

*Shapiro v. JPMorgan Chase & Co.*,
2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ................................................................ 13

*Silverman v. Motorola Sols., Inc.*,
739 F.3d 956 (7th Cir. 2013) ........................................................................................ 3

*Taft v. Ackermans*,
2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) .................................................................. 23

*Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*,
2004 WL 1087261 (S.D.N.Y. May 14, 2004) ................................................................ 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ...................................................................................................... 25

*Toure v. Amerigroup Corp.*,
2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012) .................................................................. 7

*Varljen v. H.J. Meyers & Co., Inc.*,
2000 WL 1683656 (S.D.N.Y. Nov. 8, 2000) .................................................................. 27

*Velez v. Novartis Pharmaceuticals Corp.*,
2010 WL 4877852 (S.D.N.Y. Nov. 30, 2010) ................................................................ 10

*Vizirgianakis v. Aeterna Zentaris, Inc.*,
775 F. App'x. 51 (3d Cir.  2019) ................................................................................... 20

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
396 F.3d 96 (2d Cir. 2005) ...................................................................................... 6, 10, 26

*Woburn Ret. Sys. v. Salix Pharm., Ltd.*,
2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ............................................................... 10

*Yang v. Focus Media Holding Ltd.*,
2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ................................................................. 6

*Yedlowski v. Roka Bioscience, Inc.*,
2016 WL 6661336 (D.N.J. Nov. 10, 2016) .................................................................... 20

## STATUTES

15 U.S.C. § 78u-4(a)(4) ................................................................................................ 2, 26

15 U.S.C. § 78u-4(a)(6) ................................................................................................ 6

15 U.S.C. §§ 78u-4(b)(1)-(b)(2)(A), and (b)(3)(B) ...................................................... 2

RULES

Fed. R. Civ. P. 23 ........................................................................................................ 19, 20

Court-appointed lead counsel, Glancy Prongay & Murray LLP ("GPM" or "U.S. Lead Counsel"), respectfully submits this memorandum of law in support of its Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.[1]

## I.   **PRELIMINARY STATEMENT**[2]

U.S. Lead Counsel has succeeded in obtaining an all cash, non-reversionary settlement of nine million, four hundred twenty-five thousand Canadian dollars ($9,425,000 CAD, subject to certain exchange rate adjustments set forth in the Stipulation, the "U.S. Settlement Amount")[3] for the benefit of the Settlement Class in the above-captioned action (the "Action"). This is an extremely favorable outcome in the face of substantial risks, and it is the result of U.S. Lead Counsel's vigorous, persistent, and skilled efforts. U.S. Lead Counsel now respectfully moves this Court for an award of attorneys' fees in the amount of 33⅓% of the U.S. Settlement Fund (*i.e.*, $2,336,586 U.S. dollars, equal to one-third of the $7,009,759 U.S. dollar amount initially in the U.S. Escrow Account after conversion of Canadian dollars, plus interest at the same rate as the U.S. Settlement Fund), and reimbursement of

---

[1] Unless otherwise defined herein, all capitalized terms are defined in the Global Stipulation and Agreement of Settlement dated as of February 27, 2024 (the "Stipulation"; ECF No. 55-1), or in the concurrently filed Declaration of Garth A. Spencer in Support of: (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Spencer Declaration"). Unless otherwise noted, all citations to "¶__" and "Ex." refer, respectively, to paragraphs in, and exhibits to, the Spencer Declaration.

[2] The Spencer Declaration is an integral part of this submission and, for the sake of brevity, the Court is respectfully referred to it for a discussion of, *inter alia*: the U.S. Action's history; nature of the claims asserted; negotiations leading to the U.S. Settlement; risks and uncertainties of continued litigation; a summary of the services U.S. Lead Counsel provided for the benefit of the U.S. Settlement Class; and additional information on the factors that support the fee and expense application, including the lodestar cross-check.

[3] In total, $9,524,433.75 Canadian dollars and $18,432.20 U.S. dollars have been paid into the U.S. Escrow Account. *See* ¶28 (explaining additional payment of $18,432.20 U.S. dollars). The Canadian dollars were converted into $6,991,327.28 U.S. dollars, after conversion fees. Therefore, the total amount of U.S. dollars initially in the U.S. Escrow Account, after conversion fees and before receipt of interest, was $7,009,759.48. *See* ¶2 n.2.

$108,332.37 in U.S. Litigation Expenses.  The U.S. Litigation Expenses consist of $96,332.37 in out-of-pocket costs incurred by U.S. Lead Counsel while prosecuting the U.S. Action, and $12,000 to Court-appointed lead plaintiff Robert Partovy ("U.S. Lead Plaintiff") for reimbursement of the reasonable costs he incurred (including the cost of time spent) in prosecuting the U.S. Action on behalf of the U.S. Settlement Class pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).

Achieving the U.S. Settlement was not easy.  Defendants were represented by highly skilled litigators, and U.S. Lead Counsel faced numerous hurdles and risks from the outset, including the PSLRA's heightened pleading standards and automatic stay of discovery, the high cost of experts and investigators needed to litigate a complex securities fraud case, and a substantial risk of non-payment. *See* 15 U.S.C. §§ 78u-4(b)(1)-(b)(2)(A), and (b)(3)(B).  These are not idle risks.  "To be successful, a securities class action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) (O'Connor, J., by designation).[4]  As a result, a significant number of cases are dismissed at the pleading stage.[5]

---

[4] Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

[5] *See* Ex. 4, excerpt from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024) ("NERA Report") at p. 15-16 (Fig. 14) (finding motion to dismissed filed in 96% of securities class action lawsuits, with a decision reached in 73% of the cases, and stating that "[a]mong the cases where a decision was reached, 60% were granted (with or without prejudice) while 40% were denied either in part or in full"); *see also In re Lottery.com, Inc. Sec. Litig.*, 2024 WL 454298, at *37 (S.D.N.Y. Feb. 6, 2024) (dismissing securities class action complaint with leave to amend where GPM is lead counsel).

Nor do the risks end at the pleading stage. Even when a plaintiff is successful at trial, payment is far from guaranteed.[6] There was, therefore, a significant possibility that the case would yield little or no recovery after many years of costly litigation. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits."); *In re Ocean Power Tech., Inc., Sec. Litig.*, 2016 WL 6778218, at \*28 (D.N.J. Nov. 15, 2016) ("The risk of non-payment is especially high in securities class actions, as they are notably difficult and notoriously uncertain.").

Despite facing long odds, U.S. Lead Counsel vigorously pursued this case for more than three years—working 1,378.65 hours and advancing $96,332.37 in out-of-pocket expenses, all on a *fully* contingent basis. *See* ¶¶72-73, 89-90; *see also* § III.D.1., *infra* (summarizing work performed by U.S. Lead Counsel). As compensation for U.S. Lead Counsel's considerable efforts on behalf of the U.S. Settlement Class, U.S. Lead Counsel respectfully requests a fee award in the amount of 33⅓% of the U.S. Settlement Fund. The requested fee is consistent with fee awards in comparable class action settlements, whether considered as a percentage of the U.S. Settlement or in relation to U.S. Lead Counsel's lodestar. Indeed, the requested fee represents a multiplier of 2.01 on U.S. Lead Counsel's lodestar, which is well within the range of multipliers typically awarded in class actions with substantial contingency risks such as this one. *See In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 590 (S.D.N.Y. 2008) ("In contingent litigation, lodestar multiples of over 4 are routinely awarded by courts, including this Court.").

---

[6] *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict awarding investors $2.46 billion on loss causation and damages grounds, and remanding for new trial on these issues), *reh'g denied* (July 1, 2015); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ($100 million jury verdict vacated on post-trial motions).

U.S. Lead Counsel also seeks reimbursement of $96,332.37 in out-of-pocket litigation expenses incurred in prosecuting the U.S. Action. *See* ¶¶89-90. This amount is below the $143,000 limit on U.S. Litigation Expenses disclosed in the U.S. Notice—which, by definition, included a PSLRA award to U.S. Lead Plaintiff. The expenses are reasonable in amount and were necessarily incurred in the successful prosecution of the U.S. Action. Accordingly, they should be approved.

Finally, U.S. Lead Counsel respectfully requests a PSLRA award in the amount of $12,000 to compensate U.S. Lead Plaintiff for the time and effort he expended on behalf of the U.S. Settlement Class. U.S. Lead Plaintiff, *inter alia*: reviewed the pleadings and briefs filed in the U.S. Action, as well as significant court orders; communicated with U.S. Lead Counsel about the litigation and the posture and progress of the case; responded to interrogatories and document requests; was involved in settlement negotiations; and, after discussions with U.S. Lead Counsel, authorized settlement of the case. Ex. 2, ¶¶3-5, 13. But for his "commitment to pursuing these claims, the successful recovery for the Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

For all the reasons set forth herein, and in the Spencer Declaration, U.S. Lead Counsel respectfully requests that the Court award attorneys' fees of 33⅓% of the U.S. Settlement Fund, approve reimbursement of $96,332.37 in out-of-pocket litigation expenses, and grant U.S. Lead Plaintiff's request for a PSLRA award in the amount of $12,000.

## II.   ARGUMENT

### A.   U.S. Lead Counsel Is Entitled To An Award Of Attorneys' Fees And Expenses From The Common Fund

The Supreme Court and the Second Circuit have long recognized that attorneys whose efforts create a "common fund" are entitled to a reasonable attorneys' fee from that fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 47 (2d Cir.

2000).  "The rationale for the doctrine is an equitable one: it prevents unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Goldberger*, 209 F.3d at 47; *see also In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at \*2 (S.D.N.Y. Nov. 7, 2007).  Awarding reasonable attorneys' fees from a common fund also serves an important policy goal: it encourages "skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons," and thus discourages "future misconduct of a similar nature." *Veeco*, 2007 WL 4115808, at \*2; *see also Hicks v. Morgan Stanley & Co.*, 2005 WL 2757792, at \*9 (S.D.N.Y. Oct. 24, 2005).

For the common fund doctrine to apply, "the applicant's efforts must confer a 'substantial benefit on the members of an ascertainable class, and where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread costs proportionately among them,' an award of attorneys' fees must operate to shift the costs of litigation to that group." *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (quoting *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970)).  These elements are all present here.  U.S. Lead Counsel's efforts conferred a substantial benefit—approximately $7 million U.S. dollars in cash—on an ascertainable class.  And, a fee award from the common fund will equitably shift the costs of litigation to the group benefitting from the U.S. Settlement, *i.e.*, the U.S. Settlement Class.  Accordingly, the Court should award attorneys' fees from the U.S. Settlement Fund.  *See Maley*, 186 F.Supp.2d 369.

**B.    The Court Should Award A Reasonable Percentage Of The Common Fund**

In the Second Circuit, "both the lodestar and the percentage of the fund methods are available to district judges in calculating attorneys' fees[.]" *Goldberger*, 209 F.3d at 50.  However, "[t]he trend in the Second Circuit is to use the percentage of the fund method in common fund cases like this one, as it directly aligns the interests of the class and its counsel, mimics the compensation system actually used by individual clients to compensate their attorneys, provides a powerful incentive for the efficient prosecution and early resolution of litigation, and preserves judicial resources." *Monzon v. 103W77*

*Partners, LLC*, 2015 WL 993038, at *2 (S.D.N.Y. Mar. 5, 2015); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) ("The trend in this Circuit is toward the percentage method, which directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation[.]").[7] The percentage-of-the-fund method is also supported by the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6).[8]

Use of the percentage method does not, however, render the lodestar irrelevant. Rather, part of the reasonableness inquiry is a comparison of the lodestar to the fee awarded pursuant to the percentage of the fund method "[a]s a 'cross-check.'" *Wal-Mart*, 396 F.3d at 123 (quoting *Goldberger*, 209 F.3d at 50). "[W]here [the lodestar method is] used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. "Instead, the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case" (*id.*), or "[t]he district courts [ ] may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-07 (3d Cir. 2005); *see also Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 184 (W.D.N.Y. 2011); *Johnson v. Brennan*, 2011 WL 4357376, at *14-15 (S.D.N.Y. Sept. 16, 2011).

---

[7] *See also Athale v. Sinotech Energy Ltd.*, 2013 WL 11310686, at *7 (S.D.N.Y. Sept. 4, 2013) ("the trend in this Circuit has been toward the use of a percentage of recovery as the preferred method of calculating the award for class counsel in common fund cases, particularly in complex securities class actions.").

[8] *See also Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *15 (S.D.N.Y. Sept. 4, 2014) (percentage of the fund method is "consistent with the PSLRA, which expressly provides that class counsel are entitled to attorneys' fees that represent a 'reasonable percentage' of the damages recovered by the class."); *In re Telik, Inc. Sec. Litig.*, 576 F.Supp.2d 570, 586 (S.D.N.Y. 2008) ("Congress plainly contemplated that percentage-of-recovery would be the primary measure of attorneys' fees awards in federal securities class actions.").

In sum, the weight of authority suggests that the Court should use the percentage-of-recovery method, with a lodestar cross-check, in determining a reasonable attorneys' fee. *See Bellifemine v. Sanofi-Aventis U.S. LLC*, 2010 WL 3119374, at *6 (S.D.N.Y. Aug. 6, 2010) ("applying a lodestar 'cross-check'"); *In re Bristol-Myers Squibb Sec. Litig.*, 361 F. Supp. 2d 229, 233 (S.D.N.Y. 2005) ("Typically, courts utilize the percentage method and then 'cross-check' the adequacy of the resulting fee by applying the lodestar method."); *Hicks*, 2005 WL 2757792, at *10.

### C.      The Requested Attorneys' Fees Are Reasonable

#### 1.      The Requested Attorneys' Fees Are Reasonable Under The Percentage-of-the-Fund Method

This Court has previously awarded attorneys' fees of one-third of the monetary relief recovered in a class action, finding such an award as "fair and reasonable." *See Burks v. Gotham Process, Inc.*, 2023 WL 8440866, at *2-3 (E.D.N.Y. Nov. 16, 2023) (awarding attorneys' fees of one-third of a $1,350,000 settlement fund) (Morrison, J.). Indeed, "[c]ourts in this Circuit routinely find that requests for attorney's fees totaling one-third of the settlement fund are well within the range of reasonableness." *Mikhlin v. Oasmia Pharm AB*, 2021 WL 1259559, at *7 (E.D.N.Y. Jan. 6, 2021); *Maley*, 186 F. Supp. 2d at 370 (finding 33⅓% fee request of settlement fund valued at $11.5 million "falls comfortably within the range of fees typically awarded in securities class actions"); *Kelwin Inkwel, LLC v. PNC Merchant Services Company, L.P.*, 2022 WL 3127633, at *4 (E.D.N.Y. Apr. 12, 2022) (awarding one-third of $10 million recovery, "which the Court finds to be reasonable and consistent with awards in similar cases in this Circuit."); *Toure v. Amerigroup Corp.*, 2012 WL 3240461, at *5 (E.D.N.Y. Aug. 6, 2012) (awarding one-third of $4,450,000 settlement fund and noting that a "request for one-third of the fund is reasonable and consistent with the norms of class litigation in this circuit."); *Nichols v. Noom, Inc.*, 2022 WL 2705354, at *10 (S.D.N.Y. July 12, 2022) (awarding one-third of $56 million cash settlement fund and stating that "[a] fee equal to one-third of a settlement

7

fund is routinely approved in this Circuit."); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *26 (S.D.N.Y. Nov. 26, 2002) (collecting cases and stating "[i]n this district alone, there are scores of common fund cases where fees alone (*i.e.,* where expenses are awarded in addition to the fee percentage) were awarded in the range of 33-1/3% of the settlement fund."); *In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 2020 WL 6193857, at **5-6 (E.D.N.Y. Oct. 7, 2020) (one-third fee on $51.25 million settlement); *In re Tenaris S.A. Sec. Litig.*, 2024 WL 1719632, at *10, 12 (E.D.N.Y. Apr. 22, 2024) (awarding 33⅓% of $9.5 million settlement fund); *In re Akazoo S.A. Sec. Litig.*, 2021 WL 4316717, at *1 (E.D.N.Y. Sept. 10, 2021) (awarding one-third of the $4.9 million settlement fund); *In re NYSE Specialists Sec. Litig*., No. 03-cv-8264, ECF No. 38, slip op. at ¶ 19 (S.D.N.Y. June 10, 2013) (awarding approximately 41% of $18.5 million settlement) (Ex. 11); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *1 (S.D.N.Y. June 8, 2021) (awarding 33⅓% of $8.5 million settlement fund).[9]

The requested one-third fee is, therefore, consistent with awards in other similarly complex cases. *See Levine* v. *Atricure, Inc.*, No. 1:06-cv-14324-RJH, ECF No. 85, slip op. at ¶6 (S.D.N.Y. May 27, 2011) (awarding 33⅓% and stating "[t]he requested fee 33⅓% of the settlement is within the range normally awarded in cases of this nature") (Ex. 12); *Anwar v. Fairfield Greenwich Ltd*., 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) (33% fee request of the approximate $7.7 million settlement fund "is well within the percentage range that courts within the Second Circuit have awarded in other complex litigations").

---

[9] *See also* Ex. 6 (collecting cases); *Mohney v. Shelly's Prime Steak, Stone Crab & Oyster Bar*, 2009 WL 5851465, at *5 (S.D.N.Y. Mar. 31, 2009) (collecting cases and noting that "Class Counsel's request for 33% of the Settlement Fund is typical in class action settlements in the Second Circuit.").

**2.    The Lodestar "Cross-Check" Strongly Supports The Reasonableness Of The Requested Fee**

A lodestar "cross-check" confirms the reasonableness of the requested fee award.  *See Goldberger*, 209 F.3d at 50.  The "lodestar" is calculated by multiplying the number of hours expended on the litigation by each attorney or paralegal by their current reasonable and customary hourly rate, and totaling the amounts for all time-keepers.[10]  Additionally, "[u]nder the lodestar method of fee computation, a multiplier is typically applied to the lodestar." *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 468 (S.D.N.Y. 2004).  "The multiplier represents the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Id.* (citing *Goldberger*, 209 F.3d at 47); *Savoie v. Merchants Bank*, 166 F.3d 456, 460 (2d Cir. 1999).  Thus, "[w]here, as here, counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar." *In re Comverse Tech., Inc. Sec. Litig.*, 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010).

Here, U.S. Lead Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 1,378.65 hours to the prosecution of this action, resulting in a lodestar of $1,160,081.25. ¶72.[11]  Based on a 33⅓% fee (equal to $2,336,586), U.S. Lead Counsel's lodestar yields

---

[10] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014); *Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment[.]").

[11] U.S. Lead Counsel's rates range from $925 to $1,195 for partners, and $450 to $600 for non-partners (¶¶72-74), and "are comparable to peer plaintiffs and defense-side law firms litigating matters of similar magnitude." *Lea v. Tal Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (approving GPM's *2021* rates as part of lodestar cross-check); *see also* Ex. 5 (chart of rates charged by peer plaintiff and defense counsel in complex litigation); *In re Tenaris S.A. Sec. Litig.*, 2024 WL 1719632, at *10 (E.D.N.Y. Apr. 22, 2024) (accepting GPM's *2023* billing rates of "$675 to $1,100 for partners, and $395 to $725 for non-partners" as part of lodestar cross-check).

a multiplier of 2.01.  ¶73.  This multiplier is well within the range of multipliers commonly awarded in securities class actions and other complex litigation.  *See Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Kelwin Inkwel*, 2022 WL 3127633, at *5 (collecting cases and awarding one-third of $10 million, stating that a 2.54 multiplier "is within the range of multipliers approved during lodestar cross checks of percentage-of-fund awards."); *Burns v. Falconstor Software, Inc.*, 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 10, 2014) (finding fee award of 33.3% "reasonable" based on cross-check multiplier of 4.75); *Maley*, 186 F. Supp. 2d at 369 (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country[]"); *In re Bisys Sec. Litig.*, 2007 WL 2049726, at *3 (S.D.N.Y July 16, 2007) (finding a 2.99 multiplier "falls well within the parameters set in this district and elsewhere"); *Davis*, 827 F. Supp. 2d at 185 (awarding fee representing a multiplier of 5.3, which was "not atypical" in similar cases); *Velez v. Novartis Pharmaceuticals Corp.*, 2010 WL 4877852, at *23 (S.D.N.Y. Nov. 30, 2010) (recognizing a "multiplier of 2.4 times the hourly fees already incurred.... [as] well within (indeed, at the lower end) of the range of multipliers accepted within the Second Circuit.").[12]

    "The fact that [Lead] Counsel's fee award will not only compensate them for time and effort already expended, but for the time that they will be required to spend administering the settlement going

_____

[12] *See also Sinotech*, 2013 WL 11310686, at *8 (stating that courts routinely award lodestar multipliers of "between four and five"); *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *18 (S.D.N.Y. Dec. 18, 2019) ("multipliers of between three and four times . . . have been routinely awarded in this Circuit."); *In re Interpublic Sec. Litig.*, 2004 WL 2397190, at *12 (S.D.N.Y. Oct. 26, 2004) ("In recent years multipliers of between 3 and 4.5 have been common in federal securities cases."); *In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 353 (S.D.N.Y. 2014) (awarding fee representing a multiplier of 5.2, which was "large, but not unreasonable."); *Asare v. Change Group of New York, Inc.*, 2013 WL 6144764, at *19 (S.D.N.Y. Nov. 18, 2013) ("Typically, courts use multipliers of 2 to 6 times the lodestar"); *Cornwell v. Credit Suisse Grp.*, 2011 WL 13263367, at *2 (S.D.N.Y. July 18, 2011) (awarding fee representing a 4.7 multiplier); *In re Deutsche Telekom AG Sec. Litig.*, 2005 WL 7984326 at *4 (S.D.N.Y. June 14, 2005) (awarding fee representing a 3.96 multiplier); *Woburn Ret. Sys. v. Salix Pharm., Ltd.*, 2017 WL 3579892, at *6 (S.D.N.Y. Aug. 18, 2017) (awarding fee representing a 3.14 multiplier).

forward, also supports their fee request." *Leach v. NBC Universal Media, LLC*, 2017 WL 10435878 at ¶49 (S.D.N.Y. Aug. 24, 2017). Indeed, among other things, U.S. Lead Counsel will oversee the claims administration process, respond to shareholder inquiries, and prepare and present a Motion for Distribution of the U.S. Net Settlement Fund to the Court. The multiplier will, therefore, diminish as the case moves forward because U.S. Lead Counsel will not seek any additional compensation for this work.

In sum, U.S. Lead Counsel's requested fee award is well within the range of what courts in this Circuit regularly award in class actions such as this one, whether calculated as a percentage of the fund or in relation to U.S. Lead Counsel's lodestar. Moreover, as discussed below, each factor established by the Second Circuit in *Goldberger* supports a finding that the requested fee is reasonable.

**D.      Factors Considered By Courts In The Second Circuit Confirm That The Requested Fee Is Fair And Reasonable**

The Second Circuit set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case:

> (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations.

*Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses above, demonstrates that the requested fee is reasonable.

**1.      Time And Labor Expended Support The Requested Fee**

The time and effort expended by U.S. Lead Counsel in prosecuting the U.S. Action and achieving the U.S. Settlement supports the requested fee. As set forth in greater detail in the Spencer Declaration, U.S. Lead Counsel, among other things:

- moved for the appointment of U.S. Lead Plaintiff pursuant to the PSLRA;
- conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (i) reviewing and analyzing (a) ReconAfrica's filings with

11

the Canadian Securities Administrators' SEDAR system, (b) research reports prepared by securities and financial analysts, and news articles about ReconAfrica, and (c) press releases and media reports issued and disseminated by ReconAfrica; (ii) retaining and working with private investigators who conducted an investigation that involved, *inter alia*, attempts to interview former ReconAfrica employees and other sources of relevant information; and (iii) consulting with an expert in the field of loss causation and damages;

- drafted the comprehensive 82-page (335-paragraph) Amended Class Action Complaint for Violations of the Federal Securities Laws ("U.S. Complaint") (ECF No. 31) based on this investigation;

- researched, drafted, and filed a response to Defendants' pre-motion to dismiss letter, and participated in oral argument before Judge Gujarati at the pre-motion conference (*see* ECF Nos. 34 and 37);

- researched, drafted, and filed an opposition to Defendants' motion to dismiss the Amended Complaint, and participated in oral argument on April 26, 2023, after which Judge Morrison denied Defendants' motion in its entirety (*see* ECF Nos. 44 and 45);

- prepared for and participated in a Rule 26(f) conference, filed with the Court a report related thereto (ECF No. 51), and participated in discovery conferences with Magistrate Judge Levy on May 18, 2023; September 14, 2023; and January 18, 2024;

- negotiated a protective order and ESI protocol, both of which were subsequently entered by the Court (ECF Nos. 49 and 50);

- engaged in substantial fact discovery, which entailed, *inter alia*, (i) exchanging initial disclosures; (ii) serving and responding to document requests and interrogatories; (iii) identifying relevant third parties and issuing subpoenas *duces tecum* to eight service providers to ReconAfrica, including: (a) Core Laboratories Inc.; (b) Horizon Well Logging, Inc.; (c) Worldwide Geochemistry, LLC; (d) Earthfield Technology, LLC; (e) Sproule Incorporated; (f) Geomark Research, Ltd.; (g) Schlumberger Limited (Schlumberger N.V.); and (h) Netherland Sewell & Associates, Inc.; and (iv) conducting targeted review and analysis of over 80,000 documents (totaling over 540,000 pages) produced by Defendants and third parties;

- participated with Defendants' counsel and counsel for the plaintiff in the Canadian Action in a mediation process overseen by a highly experienced third-party mediator, Jed Melnick, Esq., of JAMS, which involved, *inter alia*: (i) an exchange of written submissions concerning the facts of the case, liability and damages; (ii) a full-day formal mediation session; (iii) consultation with U.S. Lead Plaintiff's expert on damages and loss causation; (iv) a mediator's recommendation to globally settle the Actions for a total of $14.5 million CAD, which was accepted by the Parties; and (v) continued negotiations between the Parties overseen by Mr. Melnick concerning the allocation of the settlement funds between the Canadian and U.S. Actions, that resulted in Mr. Melnick proposing—and the Parties ultimately accepting—that 65% of the $14.5 million CAD settlement amount ($9,425,000 CAD, subject to exchange rate adjustment) be allocated to the U.S. Settlement Class, and 35% ($5,075,000 CAD) to the Canadian Settlement Class;

- prepared the initial draft and then negotiated the detailed confidential settlement term sheet

12

with counsel for Defendants and counsel in the Canadian Action, which was executed on December 20, 2023;

- prepared the first draft of the Stipulation (other than the exhibits pertaining solely to the Canadian Action), and then negotiated the terms of the Stipulation and Supplemental Agreement;

- worked with a damages expert to craft a plan of allocation that treats U.S. Lead Plaintiff and all other members of the proposed U.S. Settlement Class fairly;

- negotiated and obtained a supplemental payment from Defendants' insurers to the U.S. Escrow Account to compensate the U.S. Settlement Class for exchange rate fluctuations pursuant to the terms of the Stipulation;

- drafted the preliminary approval motion and supporting papers;

- prepared for and attended the preliminary approval hearing;

- worked with the Court-appointed U.S. Claims Administrator to provide notice to the U.S. Settlement Class; and

- drafted the final approval motion and supporting papers. *See* ¶¶10-28.

Moreover, as noted above, the legal work related to the U.S. Settlement will not end with the Court's approval of the proposed U.S. Settlement. Additional hours and resources will necessarily be expended assisting U.S. Settlement Class Members with their Proof of Claim forms, responding to U.S. Settlement Class Members' inquiries, shepherding the claims process to conclusion, and filing a distribution motion. No additional compensation will be sought for this work. Accordingly, this factor supports the requested fee. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) ("Considering that the work in this matter is not yet concluded for Plaintiffs' counsel who will necessarily need to oversee the claims process, respond to inquiries, and assist Class Members in submitting their Proof of Claims, the time and labor expended by counsel in this matter support a conclusion that a 33% fee award in this matter is reasonable.").

### 2.   The Risks Of Litigation Support The Requested Fee

"[T]he risk of success [is] perhaps the foremost factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized

that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."); *In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, 80 F. Supp. 3d 838, 847-48 (N.D. Ill. 2015) ("When determining the reasonableness of a fee request, courts put a fair amount of emphasis on the severity of the risk (read: financial risk) that class counsel assumed in undertaking the lawsuit."). This is because:

> No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely on the reasonable amount of time expended.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974).

In applying this factor, "'litigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *Global Crossing*, 225 F.R.D. at 467 (quoting *Goldberger*, 209 F.3d at 55); ); *see also In re NASDAQ Market-Makers Antrust. Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998) ("Risk, of course, must be judged as it appeared to counsel at the outset of the case, when they committed their capital (human and otherwise).").

Numerous courts have recognized that "class actions confront even more substantial risks than other forms of litigation" (*Comverse*, 2010 WL 2653354, at *5), and that "[s]ecurities class actions such as this are notably difficult and notoriously uncertain." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010); *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999).[13] This case was no exception.  From the outset, U.S. Lead Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation, with no guarantee of ever being compensated for the substantial investment of time and money the case would require.  In

---

[13] *See also Teachers' Ret. Sys. of La. v. A.C.L.N., Ltd.*, 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case for [many] years." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011). Indeed, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, Lead Counsel have not been compensated for any time or expenses since this case began more than [three] years ago." *Flag Telecom*, 2010 WL 4537550, at *27. U.S. Lead Counsel's commitment was substantial (*i.e.*, $1,160,081.25 in lodestar (¶72) and $96,332.37 in out-of-pocket hard costs (¶89)), and absent a recovery, it would have all been lost. *See Gross v. GFI Group, Inc.*, 784 F. App'x. 27, 28 (2d Cir. Sept. 13 2019) (affirming grant of summary judgment against plaintiffs in securities fraud class action where GPM served as one of the lead plaintiff's counsel); *In re: Korean Ramen Antitrust Litig.*, No. 3:13-cv-04115 (N.D. Cal.) (GPM lost a six-week antitrust jury trial after five years of litigation, which included many overseas depositions, the expenditure of millions of dollars of attorney and paralegal time, and the expenditure of more than a million dollars in hard costs).[14] To put it bluntly, complex litigation is not risk free, and this case was not a slam dunk.[15]

One proxy for assessing risk is "whether Class Counsel had the benefit of a prior judgment or decree in a case brought by the government." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 985 F.

---

[14] *See also Veeco*, 2007 WL 4115808, at *6 ("There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise.").

[15] For the sake of brevity, this section focuses on what made this Action riskier than other securities class actions. *See City of Birmingham Ret. & Relief Sys. v. Credit Suisse Grp. AG*, 2020 WL 7413926, at *3 (S.D.N.Y. Dec. 17, 2020) ("[G]reater risks undertaken by counsel who accept a case on a contingent fee basis support a higher settlement percentage."). For a further discussion of the litigation/contingency fee risks inherent in this case, the Court is respectfully referred to the concurrently filed Final Approval Memorandum and the Spencer Declaration. *See* Final Approval Memorandum § III.A.3; Spencer Decl. ¶¶34-48.

Supp. 410, 414 (S.D.N.Y. 1997); *see also City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 471 (2d Cir. 1974) (factors that comprise "risk of litigation" include whether "a relevant government action [has] been instituted or, perhaps, even successfully concluded against the defendant"). This is because risk is not uniform in all class actions, and the risk of nonpayment is higher in cases where there has been no government action. *In re Auto. Refinishing Paint Antitrust Litig.*, 2008 WL 63269, at *5 (E.D. Pa. Jan. 3, 2008) ("The risk of nonpayment is even higher when a defendants' *prima facie* liability has not been established by the government in a criminal action.").

In the instant case, no civil or criminal charges have been filed by the SEC, the Department of Justice or any Canadian regulatory agency with respect to the conduct at issue in this case—even as of today. And, while the Viceroy Research LLC ("Viceroy") reports did provide guidance to U.S. Lead Plaintiff, it did not address a host of issues with respect to pleading and proving a securities fraud case—including, alleging scienter and an actionable misstatement or omission with the specificity required by the PSLRA, and demonstrating loss causation—as Defendants aggressively argued in their motion to dismiss papers. *See* ECF No. 73; ECF No. 46. Among other things, Defendants argued that: (a) Viceroy had a vested financial interest in driving down the price of ReconAfrica stock and is a bad actor;[16] (b) as disclosed on Viceroy's website, Viceroy's reports were the authors' opinions, based on publicly available information, and were not statements of fact (ECF No. 43 at 7); (c) Viceroy did not have access to ReconAfrica's data and was simply rendering opinions, which were pure speculation;[17] (d) the "purported [Viceroy] disclosures, which, again, contained only publicly

---

[16] *See, e.g.*, ECF No. 43 at 7 ("Viceroy is a short-selling investor that stood to profit when the Company's stock price declined"); ECF No. 46 at 4, n.2 ("Viceroy is one of dozens of short-sellers reportedly caught up in an ongoing Department of Justice probe").

[17] *See, e.g.*, ECF No. 43 at 12 ("Plaintiff's own allegations make plain that Viceroy has never even *seen* the mud logging and wireline logging data and is merely speculating about what that data *might* reveal as opposed to what it does. (emphasis in the original)); ECF No. 46 at 4 ("[t]he Complaint treats

16

available information, did not occur in proximity to the stock sales in a way that could support a strong inference that Messrs. Evans or Escribano had a motive to trade based on purported artificial inflation of the stock price" (ECF No. 46 at 10);[18] and (e) the Viceroy reports did not qualify as a corrective disclosure as "they did not purport to be based on non-public information." ECF No. 43 at 24; *see also* ECF No. 46 at 13 (Viceroy reports were not corrective disclosures because "on their face, none of these reports included any non-public information").

While U.S. Lead Plaintiff believed he had strong counter-arguments, Defendants' contentions were not frivolous. U.S. Lead Plaintiff could not, therefore, simply rely on the allegations of the Viceroy reports and call it a day. Rather, he and his counsel had to conduct their own independent investigation, consult with experts, and then draft an amended complaint that would not only comply with the rigorous pleading standards of the PSLRA, but also allow them to successfully contest a motion to dismiss drafted by extremely competent defense counsel. *See Harris v. AmTrust Financial Services, Inc.*, 135 F.Supp.3d 155, 159 (S.D.N.Y. 2015) (dismissing complaint that "rel[ied] almost entirely on a negative report published by a short seller" and that, as a result, was "long on sound, fury and speculation, but ... short on specifics"). They would then have to prove their case by developing admissible evidence, not mere allegations from a short seller report. Put simply, a short seller report is far different from a government indictment, and "Plaintiffs' counsel (and their teams and experts) were truly the authors of the favorable outcome for the class." *Meredith Corp. v. SESAC*, *LLC*, 87 F.

---

Viceroy's analysis of the mud log and wire log data as fact, without any independent corroboration or verification of its self-serving characterizations."); ECF No. 46 at 8 ("Viceroy could not know that the test well data was 'unfavorable' because it has never seen any non-public data or undertaken any independent drilling or exploration that could provide a basis for challenging the Company data.").

[18] *See also* ECF No. 43 at 18-19 (U.S. Lead Plaintiff failed to cite any internal information, witness, meeting, communication or report showing the Individual Defendants knew or recklessly disregarded the information contained in the Viceroy reports, "[i]nstead, the only support underlying Plaintiff's speculation is the subjective opinions expressed in the … Viceroy reports.").

17

Supp. 3d 650, 670 (S.D.N.Y. 2015); *see also Maley*, 186 F. Supp. 2d at 371 (awarding one-third of settlement fund and noting that "[i]n this Action, Plaintiffs' Class Counsel did not 'piggy back' on any prior governmental action related to Del Global."); *In re Sumitomo Copper Litig.*, 74 F.Supp.2d 393, 395 (S.D.N.Y. 1999) (awarding 2.5 multiplier, which equated to 27.5% of $116 million settlement fund, and noting that "[t]here was no governmental assist to ease the task with which Petitioners was confronted.").

Another indicium of risk is the fact that this was not a restatement case. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 995 (D. Minn. 2005) (noting that one of the many hurdles plaintiffs faced was the fact that the case did not involve a restatement of financials). When companies restate their financials, they admit to a material misstatement of their financial reporting. A case predicated on a restatement is, therefore, less risky because the misstatement and materiality elements of a securities fraud claim are already met. *See Schwartz v. TXU Corp.*, 2005 WL 3148350, at *29 (N.D. Tex. Nov. 8, 2005) ("From the outset, this post-PSLRA action was an especially difficult and highly uncertain securities case, which did not involve restatement of TXU's previously issued financial statements or any other acknowledgments of wrongdoing."); *In re Schering-Plough Corp. Enhance Sec. Litig.*, 2013 WL 5505744 at *30 (D.N.J. Oct. 1, 2013) (granting fee request where the case was the antithesis of cases where liability is virtually certain due to a financial restatement).

The riskiness of the case was further enhanced by the fact that the ReconAfrica stock at issue in this case was traded on the U.S. over-the-counter ("OTC") market. Defendants would have argued, *inter alia*, that the OTC market for ReconAfrica stock was not an efficient market. Had the Court accepted this argument, U.S. Lead Plaintiff would not have been able to take advantage of the fraud on the market presumption of reliance, which would have been a major hurdle to class certification

and proving class-wide damages.  *See Basic Inc. v. Levinson*, 485 U.S. 224 (1988) (investors are presumed to rely on the market price of a company's security, which in an efficient market will reflect all of the company's public statements, including misrepresentations).  The fraud on the market presumption allows class action plaintiffs to prove reliance through evidence common to the class.  That, in turn, makes it easier for plaintiffs to establish the predominance requirement of Federal Rule of Civil Procedure 23, which requires that "questions of law or fact common to class members predominate" over individualized issues.  Fed. R. Civ. P. 23(b)(3).  Indeed, without a presumption of reliance, individualized issues of reliance ordinarily would defeat predominance and preclude certification of a securities-fraud class action.  As the Supreme Court explained in *Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.*:

> The fundamental premise of the fraud-on-the-market theory underlying *Basic*'s presumption is that an investor presumptively relies on a misrepresentation so long as it was reflected in the market price at the time of his transaction.  To invoke the *Basic* presumption, a plaintiff must prove: (1) that the alleged misrepresentation was publicly known; (2) that it was material; (3) ***that the stock traded in an efficient market***; and (4) that the plaintiff traded the stock between the time the misrepresentation was made and when the truth was revealed.  The defendant may then rebut the presumption through any showing that severs the link between the alleged misrepresentation and either the price received (or paid) by the plaintiff, or his decision to trade at a fair market price.

594 U.S. 113, 119 (2021) (cleaned up).

Although, U.S. Lead Plaintiff believed he would have would have prevailed on this issue, proving market efficiency with respect to the OTC market was not a forgone conclusion.  *Compare In re Teva Sec. Litig.*, 2021 WL 872156, at *18, 42 (D. Conn. Mar. 9, 2021) (certifying classes of preferred shares and notes that traded over the counter) *with Serfaty v. Int'l Automated Systems, Inc.*, 180 F.R.D. 418, 42123 (D. Utah 1998) (holding that market was not efficient for OTC stock and denying class certification).  U.S. Lead Plaintiff would have needed to proffer expert testimony on the issue in conjunction with his class certification motion, and "Defendants would . . . most likely rely

19

on an expert who would reach the opposite conclusion." *P. Van Hove BVBA v. Universal Travel Group, Inc.*, 2017 WL 2734714, at *8 (D.N.J. June 26, 2017). Not only did this potential "battle of the experts" insert more risk into the case, but it would increase the time and money U.S. Lead Counsel was required to commit to the Action. *See Yedlowski v. Roka Bioscience, Inc.*, 2016 WL 6661336, at *16 (D.N.J. Nov. 10, 2016) (recognizing "battle of the experts at class certification and trial" and noting "that Plaintiff might lose."); *see also Dartell v. Tibet Pharma., Inc.*, 2017 WL 2815073, at *4 (D.N.J. June 29, 2017) (observing that "experts are expensive").

Defendants also could have petitioned the Second Circuit under Rule 23(f) for review of any decision granting class certification, which would have further increased U.S. Lead Plaintiff's costs (both in terms of time and money) and extended the duration of the litigation—even if he prevailed. *See, e.g., Vizirgianakis v. Aeterna Zentaris, Inc.*, 775 F. App'x. 51, 52 (3d Cir. 2019) (affirming district court decision certifying the class fifteen months after initial decision). U.S. Lead Counsel assumed these risks, and a loss after many years of litigation is not unprecedented. *See Ark. Tchr. Ret. Sys. v. Goldman Sachs Grp., Inc*., 77 F.4th 74, 81 (2d Cir. 2023) (de-certifying the class and effectively ending the case—after approximately 13 years of litigation—based on 2021 Supreme Court decision allowing courts to consider certain price impact arguments at the class certification stage); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533-34 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016) (after jury verdict for plaintiff, court significantly reduced scope of class by amending class definition to exclude purchasers of ordinary shares, based on Supreme Court's reversal, in *Morrison v. Nat'l Australia Bank Ltd*., 561 U.S. 247 (2010), of unbroken circuit court precedent over 40 years).

Finally, this case presented very real ability-to-pay issues. As set forth in the Complaint, "[a]t all relevant times, ReconAfrica was a small startup with no oil and gas reserves and no revenues." ECF

No. 31, ¶39. The Company is based in Canada, its exploration efforts are limited to Namibia and Botswana, it has never reported an operating profit, it has few, if any, assets in the U.S., and there was no guarantee that it would have sufficient funds to pay a judgment years in the future. ¶47. Similarly, there is no guarantee that the Individual Defendants, many of whom reside outside of the United States, would have sufficient funds to pay a substantial judgment. ¶48. Thus, in all likelihood, insurance coverage was the only practical source of recovery for both the U.S. and Canadian actions. U.S. Lead Counsel had no knowledge of whether Defendants had D&O coverage when undertaking this litigation and, because of the PSLRA discovery stay, would not be able to obtain the applicable policies, if any, until after U.S. Lead Plaintiff prevailed against a motion to dismiss.

There was also a strong chance that any available insurance funds would be reduced by defense costs—a reduction that became particularly pronounced once the Defendants were litigating this securities class action in the U.S. and the case in Canada. Accordingly, there was a very significant risk that the U.S. Action might yield a small recovery, or indeed no recovery at all, following many years of hard-fought litigation. *See* ¶¶34-48; *see also Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000) (finding "[t]he risk of nonpayment in this case was acute" where, *inter alia*, the corporate defendant "lacked significant unencumbered hard assets against which plaintiffs could levy had a judgment been obtained" and there was "the risk that the wasting policy would run out by the time a trial was over").

Despite the many uncertainties regarding the outcome of the case, U.S. Lead Counsel undertook this case on a wholly contingent basis, knowing that the litigation could last for years and would require the devotion of a substantial amount of time and a significant expenditure of litigation expenses. U.S. Lead Counsel's assumption of this contingency fee risk strongly supports the reasonableness of the requested fee. *See Flag Telecom*, 2010 WL 4537550, at *27 ("Courts in the Second Circuit have

21

recognized that the risk associated with a case undertaken on a contingent fee basis is an important factor in determining an appropriate fee award."); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 148 (S.D.N.Y. 2010) ("There was significant risk of non-payment in this case, and Plaintiffs' Counsel should be rewarded for having borne and successfully overcome that risk.").

### 3.    The Magnitude And Complexity Of The Action Support The Fee

Courts have repeatedly recognized the "notorious complexity" of securities class action litigation. *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006); *Lea,* 2021 WL 5578665, at *9 ("Class action suits have a well-deserved reputation as being most complex, and securities class actions are notably difficult and notoriously uncertain to litigate."); *La. Mun. Police Emps. Ret. Sys. v. Sealed Air Corp.*, 2009 WL 4730185, at *8 (D.N.J. Dec. 4, 2009) ("securities class actions are inherently complex"). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA," and other changes in the law. *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000); *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages."). This case was no exception.

Here, in addition to facing the heightened pleading standard and automatic discovery stay of the PSLRA—which can be problematic in the best of times as demonstrated by the high dismissal rate of securities class actions referenced *supra*—the complexity of the case was further magnified by the case's international dimension. For example, Defendants' interrogatory responses identified witnesses in the U.S., Canada, the U.K., France, Germany, Namibia, and Angola. ¶37. The prevalence of foreign-resident witnesses makes discovery substantially more difficult and expensive, and its outcome uncertain, due to the significant efforts, delay and uncertainty associated with attempting to locate, serve, and compel compliance from such individuals under international agreements such as

22

the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters. *See Rabbi Jacob Joseph Sch. v. Allied Irish Banks, P.L.C.*, 2012 WL 3746220, at *7 (E.D.N.Y. Aug. 27, 2012) ("Courts in the Second Circuit have widely recognized that obtaining evidence through the Hague Convention and letters rogatory are cumbersome and inefficient, and hardly make litigation in the United States convenient."); *see also Universal Travel*, 2017 WL 2734714, at *7 (noting that "this case has an additional degree of difficulty because much of the relevant evidence is likely located in China" and that "[g]athering evidence in China for litigation that is occurring in the United States is a difficult and expensive process."). Thus, this was an incredibly complex matter—even by the standards of securities class actions.

The magnitude of this action was similarly unquestionable. This was hard-fought, expensive, multi-year litigation, with millions of dollars of damages at stake, and it required considerable skill and resources to litigate. As such, the magnitude and complexity of the litigation support the requested fee. *See City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *16 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4. The Quality Of Representation Supports The Requested Fee

"To determine the 'quality of the representation,' courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007); *see also Veeco*, 2007 WL 4115808, at *7. Both factors support the conclusion that a 33⅓% fee award in this case is reasonable under the circumstances.

The U.S. Settlement provides a cash payment of approximately $7,009,759 U.S. dollars for the benefit of the U.S. Settlement Class. This is an outstanding result considering the significant risks of continued litigation. U.S. Lead Plaintiff's damages expert estimates that if U.S. Lead Plaintiff had

fully prevailed on all his claims at summary judgment and after a jury trial, and if the Court and jury accepted his damages theory—*i.e.*, U.S. Lead Plaintiff's *best case scenario*—the total *maximum* damages *potentially* available in this U.S. Action would be approximately $56.3 million U.S. dollars. Thus, the $7,009,759 amount represents a recovery of 12.4% of maximum potential damages. This recovery is *more than three times greater* than the 3.8% median settlement recovery in securities class actions from 2014 to 2023, in cases with comparable estimated damages.[19]

Moreover, U.S. Lead Counsel's significant experience in prosecuting securities class action claims, vigorous representation, and commitment to providing the U.S. Settlement Class with the best possible representation were major factors in obtaining this exceptional result. *See* Ex. 3 (GPM firm résumé); *see also Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019 (GPM lawyers "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims by expending significant time and effort on the case."); *Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987) ("prosecution and management of a complex national class action requires unique legal skills and abilities."). Indeed, "[n]ot only did [Lead] Counsel's skill and expertise contribute to the favorable settlement for the class, it contributed to the overall efficiency of the case." *Veeco*, 2007 WL 4115808, at *7.

"Courts have [also] recognized that the quality of the opposition should also be taken into consideration in assessing the quality of the counsel's performance." *In re Signet Jewelers Limited Sec. Litig.*, 2020 WL 4196468, at *20 (S.D.N.Y. July 21, 2020). Here, Defendants were represented by Neal, Gerber & Eisenberg LLP and Pryor Cashman LLP, both of which are experienced, aggressive, and highly skilled counsel. ¶84. "The ability of plaintiffs' counsel to obtain such a favorable settlement for

---

[19] *See* Ex. 4 (NERA Report at 25 (Fig. 21) (median recovery for securities class actions that settled between January 2014 and December 2023 was 3.8% for cases with estimated damages between $50-$99 million).

the Class in the face of such formidable legal opposition confirms the superior quality of their representation." *Schwartz*, 2005 WL 3148350, at *30.

### 5.      The Requested Fee In Relation To The Settlement Amount

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value." *Comverse*, 2010 WL 2653354, at *3. As discussed in detail in Section III.C.1., *supra*, the requested 33⅓% fee is consistent with percentage fees that courts in the Second Circuit have awarded in comparable complex cases. Accordingly, the requested fee is reasonable in relation to the Settlement.

### 6.      Public Policy Considerations Support The Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Del Global*, 186 F. Supp. 2d at 373. This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors. Indeed, the Supreme Court "has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission (SEC)." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). If the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29.

Here, U.S. Lead Counsel invested substantial amounts of time and money vigorously pursuing allegedly serious wrongdoing by a public enterprise, *and it did so on a fully contingent basis*. Accordingly, public policy considerations favor U.S. Lead Counsel's attorneys' fee request. *See*

25

*Credit Suisse*, 2020 WL 7413926, at *2 ("Protecting investors from fraudulent or misleading investments serves the public interest, and Lead Counsel's fees should reflect the important goal of 'serv[ing] as an inducement for lawyers to make similar efforts in the future.'") (quoting *Wal-Mart*, 396 F.3d at 96) (alteration in the original).

### E.    U.S. Lead Counsel's Expenses Should Be Reimbursed

"It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class." *Flag Telecom*, 2010 WL 4537550, at *30; *see also In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.").

Here, U.S. Lead Counsel incurred at total of $96,332.37 in out-of-pocket litigation expenses. ¶89. The expenses, and a categorization thereof, are attested to in the Spencer Declaration. *Id*. These expenses include, among others: (a) expert fees; (b) on-line legal and factual research; (c) document management and hosting; (d) mediation fees; (e) travel costs; (f) and (g) private investigator charges. ¶90. These expenses were critical to U.S. Lead Plaintiff's success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities action. *See Signet Jewelers*, 2020 WL 4196468, at *22. As such, they should be reimbursed. *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund.").

### F.    U.S. Lead Plaintiff Should Be Granted A PSLRA Award

In connection with its request for reimbursement of Litigation Expenses, U.S. Lead Counsel also respectfully requests a PSLRA award to U.S. Lead Plaintiff in the amount of $12,000 for time

spent prosecuting the Action. 15 U.S.C. § 78u-4(a)(4). "Court[s] have found that the PSLRA permits courts to award lead plaintiffs in federal securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class." *Guevoura*, 2019 WL 6889901, at *22. Reimbursement of such costs are allowed because they "encourage[] participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000).

Here, U.S. Lead Plaintiff, who is a doctor with a medical practice as a Family Physician, spent substantial time in furtherance of the interests of the U.S. Settlement Class. U.S. Lead Plaintiff, *inter alia*, reviewed the pleadings and briefs filed in the Action, as well as court orders; communicated with U.S. Lead Counsel about the litigation and the posture and progress of the case; responded to discovery, including the production of documents; was involved in settlement negotiations; and, after discussions with U.S. Lead Counsel, authorized settlement of the case. Ex. 2, ¶¶3-5. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives" (*see In re Marsh & McLennan Cos., Inc. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009)), and the amounts requested are consistent with awards in other complex cases.[20] Consequently, U.S. Lead Counsel respectfully requests that the Court approve the award.

---

[20] *See Veeco*, 2007 WL 4115808, at *12 (awarding lead plaintiff approximately $15,900 of $5.5 million settlement for time spent supervising litigation, and characterizing such awards as "routine" in this Circuit); *In re Bank of Am. Corp, Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 133 (2d Cir. 2014) (affirming award of over $450,000 to representative plaintiffs for time spent by their employees on the action); *In re XL Fleet Corp. Sec. Litig.*, 2024 WL 1884483, at *2 (S.D.N.Y. Apr. 30, 2024) (PSLRA award of $25,000 to Lead Plaintiff and $15,000 to each of the four additional named plaintiffs); *In re Signet Jewelers Limited Sec. Litig.*, 2020 WL 4196468, at *24 (S.D.N.Y. July 21, 2020) (collecting cases and awarding $25,410 to lead plaintiff); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *1 (S.D.N.Y. Oct. 16, 2019) (PSLRA awards of $12,500 for each of the five representative Plaintiffs); *In re Qudian Inc. Sec. Litig.*, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $25,000, and class representative $12,500).

## III.   CONCLUSION

For the foregoing reasons, U.S. Lead Counsel respectfully requests that the Court grant the requested relief.

Dated: November 14, 2024                **GLANCY PRONGAY & MURRAY LLP**

By: */s/ Garth A. Spencer*
Joseph D. Cohen (*pro hac vice*)
Ex Kano S. Sams II (*pro hac vice*)
Garth A. Spencer (GS-0298)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
jcohen@glancylaw.com
esams@glancylaw.com
gspencer@glancylaw.com

Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
glinkh@glancylaw.com

*Counsel for U.S. Lead Plaintiff Robert Partovy and the
Proposed U.S. Settlement Class*

**PROOF OF SERVICE**

I hereby certify that on this 14th day of November, 2024, a true and correct copy of the

foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

> *s/ Garth A. Spencer*
> Garth A. Spencer

29