**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE RECONNAISSANCE ENERGY AFRICA LTD. SECURITIES LITIGATION | Case No. 1:21-cv-06176-NRM-RML<br><br>Honorable Nina R. Morrison |

**MEMORANDUM OF LAW IN SUPPORT OF U.S. LEAD PLAINTIFF'S**
**<u>MOTION FOR U.S. CLASS DISTRIBUTION ORDER</u>**

## TABLE OF CONTENTS

I.     BACKGROUND ..................................................................................................... 1

II.    U.S. CLAIMS ADMINISTRATION.................................................................... 3

III.   THE COURT SHOULD REJECT THE DISPUTED CLAIMS......................... 5

IV.   DISTRIBUTION OF U.S. NET SETTLEMENT FUND .................................... 7

V.    RELEASE OF U.S. CLAIMS.............................................................................. 10

VI.   THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES ................................................................. 11

VII.  RECORDS RETENTION AND DESTRUCTION .......................................... 12

VIII. CONCLUSION................................................................................................... 12

# TABLE OF AUTHORITIES

## CASES

*In re Cendant Corp. Sec. Litig.*,
454 F.3d 235 (3d Cir. 2006)........................................................................................ 7

*In re Citigroup Inc. Sec. Litig.*,
2014 WL 7399039 (S.D.N.Y. Dec 29, 2014) ............................................................. 7

*In re Eletrobras Sec. Litig.*,
467 F. Supp. 3d 149 (S.D.N.Y. 2020).................................................................... 11

*In re Loop Industries, Inc. Sec. Litig.*,
2023 WL 6458976 (S.D.N.Y. Oct. 4, 2023) ............................................................. 9

*In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*,
2010 WL 11595033 (S.D.N.Y. Dec. 23, 2010) ....................................................... 11

*In re Patriot Nat'l, Inc. Sec. Litig.*,
2021 WL 1040462 (S.D.N.Y. Mar. 18, 2021) ......................................................... 11

*In re Peloton Interactive, Inc., Sec. Litig.*,
2025 WL 2147041 (E.D.N.Y. May 21, 2025) ........................................................... 6

*In re Peloton Interactive, Inc., Sec. Litig.*,
2025 WL 2146059 (E.D.N.Y. July 29, 2025) ........................................................... 6

*In re Qudian Inc. Sec. Litig.*,
2022 WL 633863 (S.D.N.Y. Mar. 4, 2022) ............................................................. 11

*In re Stable Rd.Acquisition Corp. Sec. Litig.*,
2025 WL 924928 (C.D. Cal. Mar. 24, 2025)............................................................ 9

*Stein v. Eagle Bancorp, Inc.*,
2022 WL 4245185 (S.D.N.Y. Sept. 15, 2022).......................................................... 11

*Wilson v. LSB Indus., Inc.*,
2020 WL 5628039 (S.D.N.Y. Sept. 21, 2020).......................................................... 11

Court-appointed lead plaintiff Robert Partovy ("U.S. Lead Plaintiff"), respectfully submits this memorandum of law in support of his motion ("Motion") for entry of the Proposed U.S. Class Distribution Order ("U.S. Class Distribution Order") in the above-captioned action (the "U.S. Action").[1]  If entered by the Court, the U.S. Class Distribution Order will, among other things: (i) approve the U.S. Claims Administrator's recommendations accepting and rejecting U.S. Claims submitted in the U.S. Action; (ii) direct the distribution of the U.S. Net Settlement Fund to Authorized U.S. Claimants whose U.S. Claims have been accepted as valid and approved by the Court; and (iii) approve the U.S. Claims Administrator's fees and expenses incurred in connection with the U.S. Action.  The specifics of the proposed plan for distribution of the U.S. Net Settlement Fund are set forth in the accompanying Kimball Declaration.  *See* Kimball Decl. ¶¶44(a)-(d).

## I.    BACKGROUND

On February 27, 2024, the Parties entered into the Stipulation, the terms of which established a $9,425,000 CAD U.S. Settlement Fund for the benefit of the U.S. Settlement Class, consisting of all persons and entities that purchased or otherwise acquired publicly traded ReconAfrica Securities on the U.S. OTC market, between February 28, 2019 and September 7, 2021, both dates inclusive ("U.S. Settlement Class Period"), and were damaged thereby. *See* Stipulation ¶1(aaaaa).[2]

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Global Stipulation and Agreement of Settlement dated February 27, 2024 (ECF No. 55-1; the "Stipulation"), or the concurrently filed Declaration of Morgan Kimball in Support of U.S. Lead Plaintiff's Motion for U.S. Class Distribution Order ("Kimball Decl." or "Kimball Declaration"), submitted on behalf of the Court-approved U.S. Claims Administrator, Epiq Class Action & Claims Solutions, Inc. ("U.S. Claims Administrator" or "Epiq").

[2] Excluded from the U.S. Settlement Class are: (a) persons who suffered no compensable losses; and (b)(i) Defendants, (ii) any person who served as a partner, control person, officer and/or director of ReconAfrica and/or its predecessor Lund during the U.S. Settlement Class Period, and members of their Immediate Families, (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of ReconAfrica and/or Lund, (iv) any entity in which the

The Court granted preliminary approval of the Settlement on August 13, 2024.  ECF No. 60 (the "Preliminary Approval Order").  Pursuant to the Preliminary Approval Order, a total of 19,588 potential Settlement Class Members and nominees were mailed copies of the U.S. Postcard Notice. *See* Kimball Decl.  ¶5.  Moreover, the U.S. Claims Administrator: (i)  published the Summary Notice in *Investor's Business Daily*, transmitted the Summary Notice over *PR Newswire* (a national newswire service); (ii) established a case-specific website dedicated to the Settlement (www.ReconAfricaUSSecuritiesSettlement.com; the "U.S. Settlement Website"); (iii) posted the U.S. Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "U.S. Notice") and U.S. Proof of Claim and Release Form ("U.S. Claim Form") to the U.S. Settlement Website; and (iv) set up a toll-free telephone helpline.  *See* ECF No. 68-1.  The U.S. Notice and the Settlement Website provided U.S. Settlement Class Members with information about the U.S. Settlement, including the deadlines for requesting exclusion, objecting, and filing U.S. Claims.  The Settlement Website also provided

---

Defendants have or had a controlling interest, (v) any trust of which an Individual Defendant is the settler or which is for the benefit of an Individual Defendant and/or member(s) of their Immediate Families, (vi) Defendants' liability insurance carriers, and (vii) the legal representatives, heirs, successors, predecessors, and assigns of any person or entity excluded under provisions (i) through (vi). *See* Stipulation ¶1(aaaaa).  Also excluded from the U.S. Settlement Class is WesBanco Trust & Investment Services Tr UA Dtd 4-29-1986 with and for Edward W. Stifel, III, which submitted a request for exclusion from the U.S. Settlement Class that was accepted by the U.S. Court. ECF No. 71 (judgment) at ¶3 & Ex. 1.  For the avoidance of doubt: (a) "affiliates" are persons or entities that directly, or indirectly through one or more intermediaries, control, are controlled by or are under common control with one of the Defendants; and (b) while investors that purchased ReconAfrica Securities exclusively on the TSXV or Frankfurt markets are excluded from the U.S. Settlement Class, investors that purchased ReconAfrica Securities on the TSXV or Frankfurt markets in addition to the U.S. OTC market may be members of the U.S. Settlement Class. *See*  Stipulation ¶1(aaaaa). However, ReconAfrica Securities purchased on the TSXV or Frankfurt markets may only be compensated from the Canadian Settlement Fund and are not eligible for compensation from the U.S. Settlement Fund. *Id.*

U.S. Settlement Class Members with access to downloadable documents relevant to the Settlement, such as the Stipulation, U.S. Notice, and U.S. Claim Form, and allowed U.S. Settlement Class Members to file claims online. *Id*.

On December 30, 2024, the Court entered an order granting final approval of the U.S. Settlement as fair, reasonable, and adequate. ECF No. 71. That same day, the Court entered an order approving the Plan of Allocation, which was explained in the U.S. Notice, as providing a fair and equitable basis upon which to allocate the proceeds of the U.S. Net Settlement Fund. ECF No. 72.

U.S. Lead Counsel now request that the Court authorize distribution of the U.S. Net Settlement Fund (after payment of the U.S. Claims Administrator expenses as discussed below, and payment of, or reserve for, Taxes and escrow fees) to Authorized U.S. Claimants.

## II.    U.S. CLAIMS ADMINISTRATION

Pursuant to the Court-approved U.S. Notice, all U.S. Settlement Class Members wishing to participate in the U.S. Settlement were required to submit U.S. Claim Forms online or by mail, postmarked or received no later than January 9, 2025. *See* ECF No. 68-1, Ex. B (U.S. Notice). However, in the U.S. Final Judgment, the Court provided that (a) no new U.S. Claims may be accepted after April 25, 2025; and (b) no adjustments to U.S. Claims, which would result in an increased Recognized Loss Amount may be accepted after August 29, 2025. ECF No. 71 at ¶17. The U.S. Claims Administrator added a banner at the top of the landing page of the U.S. Settlement Website to provide notice of the new claims filing deadline. *See* U.S. Settlement Website. The U.S. Claims Administrator received and reviewed all submitted U.S. Claims and, to the extent that a U.S. Claim was deficient in any regard, the U.S. Claims Administrator notified the U.S. Claimant

3

of the deficiency and advised the U.S. Claimant as to possible ways to cure the deficiency. Kimball Decl. ¶¶21-25.

Of the 5,251 U.S. Claims submitted to and fully processed by the U.S. Claims Administrator, 1,445 were paper submissions, or online submissions through the online filing portal on the Settlement Website. Kimball Decl. ¶21. The remaining 3,806 U.S. Claims were Electronic Claims that are typically filed by banks, brokers, nominees, and other third-party filers that file claims on behalf of numerous U.S. Claimants ("E-Claim Filers"). *Id*. ¶13. Because E-Claim Filers submit a high volume of U.S. Claims on behalf of multiple U.S. Claimants, the U.S. Claims Administrator provides E-Claim Filers with the opportunity to submit a master claim form and mail a computer disc or submit an electronic file containing all the transactions for the U.S. Claimants on whose behalf the E-Claim Filer is submitting a Claim—rather than providing large volumes of paper documentation. *Id.* This process is designed to expedite the U.S. Claims process.

If a paper or online Claim was deficient or defective, the U.S. Claims Administrator sent a Notice of Incomplete U.S. Claim Form ("Deficiency Notice") to the U.S. Claimant, a sample of which is attached as Exhibit B to the Kimball Declaration. Kimball Decl. ¶22; Ex. B. The Deficiency Notice advised the U.S. Claimant that he, she, or it had twenty (20) days from the date of the letter to submit additional information and/or documentary evidence to cure the Claim, otherwise the U.S. Claims Administrator would recommend the Claim for rejection. *Id.* Of the 1,445 paper and online U.S. Claims, the U.S. Claims Administrator sent deficiency letters for 927 U.S. Claims (or approximately 64%). *Id.* ¶21. If an Electronic Claim was deficient or defective, the U.S. Claims Administrator sent an email to each E-Claim Filer with a Transaction Report containing detailed information associated with the accounts and indicating which of those accounts within the filing were deficient and/or rejected. *Id.* ¶24. Of the 3,806 Electronic U.S.

4

Claims, filed by a total of eight (8) E-Claim filers, 2,032 (or approximately 53.4%) were incomplete or deficient. *Id.* ¶¶13, 24. The U.S. Claims Administrator worked diligently with U.S. Claimants to resolve deficiencies where possible, and as a result of this process, a number of U.S. Claimants with initially deficient U.S. Claims are now eligible to participate in the Settlement.

Ultimately, as detailed in the Kimball Declaration, after the deficiency process was complete, the U.S. Claims Administrator determined that 2,160 U.S. Claims are acceptable in whole and 163 are accepted in part. Kimball Decl. ¶¶37, 39-40; Ex. D-1. The U.S. Claims Administrator also determined that 2,928 U.S. Claims are not eligible and should be rejected for the following reasons: (i) 2,340 U.S. Claims did not result in a Recognized Loss under the Court-approved U.S. Plan of Allocation; (ii) 265 U.S. Claims had no eligible purchases during the U.S. Settlement Class Period; (iii) 226 were deficient U.S. Claims with condition of ineligibility never cured; (iv) 7 U.S. Claims were withdrawn; (v) 55 were duplicate claims; and (vi) 35 were late (received after April 25, 2025). *Id.* ¶¶38-39; Ex. D-2. Several of the denied claims were rejected for multiple reasons. *Id.* at n.3.

## III.    THE COURT SHOULD REJECT THE DISPUTED CLAIMS

Epiq received 53 requests for Court review of the administrative rejection of their U.S. Claims. Kimball Decl. ¶26. In an attempt to resolve the disputes without necessitating the Court's intervention, "Epiq attempted to contact all of the persons requesting Court review, answer all of their questions, and fully explain Epiq's determination of the U.S. Claim's status, and attempted to facilitate the submission of missing information or documentation where applicable." *Id.* As a result of these efforts, through November 26, 2025, Epiq was able to resolve 49 of the requests for review and only four (4) U.S. Claims, submitted by two (2) claimants, have outstanding requests for judicial review of Epiq's administrative determinations to reject the U.S. Claims (the "Disputed

Claims" or "Disputed Claimants"). *Id*. These Disputed Claims are being presented to the Court for resolution by this motion. The Disputed Claims are discussed in paragraphs 26-32 of the Kimball Declaration and copies of the Disputed Claims and correspondence related to these Claims are included in Exhibit C to the Kimball Declaration. *Id*. at ¶¶26-32. U.S. Lead Counsel have reviewed the Disputed Claims and concur with Epiq's recommendations.

Epiq recommended Disputed Claimant No. 1 (U.S. Claim 404) for rejection because the claim does not calculate to a Recognized Loss pursuant to the U.S. Plan of Allocation.[3] More specifically, Disputed Claimant No. 1 received their ReconAfrica U.S. Stock as a gift from a donor who also submitted a different claim relating to the same shares. *See* Kimball Decl., ¶27, Ex. C. Accordingly, Disputed Claimant No. 1 did not suffer compensable damages under the Court-approved U.S. Plan of Allocation and should be rejected. *See* ECF No. 68-1, Ex. B (Notice) at ¶71 ("The receipt or grant by gift, inheritance or operation of law of ReconAfrica U.S. Stock during the U.S. Settlement Class Period shall not be deemed a purchase, acquisition or sale of ReconAfrica U.S. Stock for the calculation of an Authorized U.S. Claimant's Recognized Loss Amount . . . unless . . . no U.S. Claim Form was submitted by or on behalf of the donor . . .").[4]

---

[3] The U.S. Plan of Allocation is detailed in the U.S. Notice. *See* ECF No. 68-1, Ex. B (Notice) at ¶¶61-79.

[4] Even if Disputed Claimant No. 1 had purchased the ReconAfrica U.S. Stock, he held the shares through the close of trading on December 6, 2021 (the end of the "90-day lookback" provision of the Private Securities Litigation Reform Act of 1995), and they were purchased at prices less than the 90-Day Lookback Value of $4.93, so there would be no Recognized Loss for these shares under the Plan of Allocation. *See* ECF No. 68-1, Ex. B (Notice) at ¶67(I)(d); Kimball Decl., Ex. C; *see also In re Peloton Interactive, Inc., Sec. Litig.*, 2025 WL 2147041, at *3 (E.D.N.Y. May 21, 2025) (claims ineligible for distribution where "[t]he price at which four of these claimants purchased their shares of Peloton stock was less than the average closing price for stock during the 90-day lookback period, *i.e.*, they suffered no compensable loss from Defendants' alleged conduct and thus have no Recognized Loss."), *R&R adopted by In re Peloton Interactive, Inc., Sec. Litig.*, 2025 WL 2146059 (E.D.N.Y. July 29, 2025).

The Court should also reject U.S. Claims 800000903, 800000904, and 800000905. The Plan of Allocation provides that "[t]o the extent a U.S. Claimant had a market gain with respect to his, her, or its overall transactions in ReconAfrica U.S. Stock during the U.S. Settlement Class Period, the value of the U.S. Claimant's Recognized Claim shall be zero." *See* ECF No. 68-1, Ex. B (Notice) at ¶74. Disputed Claimant No. 2 had an overall *market gain* with respect to its transactions in ReconAfrica U.S. Stock during the U.S. Settlement Class Period. *See* Kimball Decl., ¶30, Ex. C at pp. 11, 36, and 46 of 55 (showing calculations under the Plan of Allocation resulted in an overall market gain for each disputed claim). Numerous courts have approved plans of allocation including market gain (or netting) provisions. *See*, *e.g.*, *In re Cendant Corp. Sec. Litig.*, 454 F.3d 235, 246-47 (3d Cir. 2006) (upholding application of a "netting provision" providing that "all profits shall be subtracted from all losses on all transactions of CUC and Cendant publicly-traded securities during the class period to determine the net claim of each class member. If a class member made a net profit, the value of his, her or its claim shall be zero."); *In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *2-4 (S.D.N.Y. Dec 29, 2014) (overruling objection based on objector's "aggregate gain" from class period transactions where plan of allocation provided: "[t]o the extent an Authorized Claimant had an aggregate gain from his, her or its transactions in Citigroup common stock during the Class Period, the value of his, her or its total Recognized Loss will be zero.").

Accordingly, the Court should affirm Epiq's determination that the Disputed Claims should be rejected.

## IV.    DISTRIBUTION OF U.S. NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the U.S. Claims Administrator will conduct an initial distribution of the U.S. Net Settlement Fund to all

U.S. Claimants on a *pro rata* basis whose distribution payments calculate to $10.00 or more (the "Initial U.S. Distribution"). *See* Kimball Decl. ¶¶44(a)(i)-(iii). Based on the substantial experience of U.S. Lead Counsel in similar distributions, it is anticipated that a certain number of the payments to be distributed to U.S. Settlement Class Members who filed valid U.S. Claims will not be cashed promptly. To encourage Authorized U.S. Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to uncashed checks, U.S. Lead Counsel propose that all the distribution checks bear a notation "DEPOSIT PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT NEGOTIATED WITHIN 90 DAYS OF ISSUE DATE." *Id*. ¶44(a)(iv).

The U.S. Claims Administrator will make reasonable and diligent efforts to encourage Authorized U.S. Claimants who are entitled to participate in the distribution of the U.S. Net Settlement Fund to cash their distribution. However, if after six (6) months any funds remain in the U.S. Net Settlement Fund, by reason of uncashed checks or otherwise, the U.S. Claims Administrator will conduct a second distribution (the "Second U.S. Distribution") if U.S. Lead Counsel, in consultation with the U.S. Claims Administrator, determines that it is cost-effective to do so. Kimball Decl. ¶44(b).

During the Second U.S. Distribution, any amounts remaining in the U.S. Net Settlement Fund after the Initial U.S. Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second U.S. Distribution), Taxes, and any escrow fees, will be distributed: (i) first, if U.S. Lead Counsel, in consultation with Epiq, determines sufficient funds remain to warrant the processing of U.S. Claim Forms received after April 25, 2025, such claims will be processed, and any such late claims that are otherwise valid, together with any late adjustments to U.S. Claim Forms received after August 29, 2025, will be paid distribution amounts

or additional distribution amounts to bring them into parity (in terms of the ratio of their Recognized Claims to their Distribution Amounts) with other Authorized U.S. Claimants who have cashed their checks ("Post April 25 Authorized U.S. Claimants"); and (ii) second, on a *pro rata* basis to all Authorized U.S. Claimants who cashed their Initial U.S. Distribution check and would receive at least $10.00 USD from such distribution based on their *pro rata* share of the remaining funds after accounting for distributions to be made to the Post April 25 Authorized U.S. Claimants. If U.S. Lead Counsel, in consultation with Epiq, determines it is not cost effective to process U.S. Claim Forms received after April 25, 2025, or adjustments to Claim Forms received after August 29, 2025, those claims will be not be processed or adjusted, and the Second U.S. Distribution will be limited to Authorized U.S. Claimants in the Initial U.S. Distribution who cashed their Initial U.S. Distribution check and would receive at least $10.00 USD from such distribution based on their *pro rata* share of the remaining funds. *Id*.

Following the Second U.S. Distribution, additional redistributions will occur following the same process of the Second U.S. Distribution until no funds remain in the U.S. Net Settlement Fund or until U.S. Lead Counsel, in consultation with the U.S. Claims Administrator, determines that additional distributions are no longer cost-effective. *Id*. ¶44(c).

Finally, if any funds remain in the U.S. Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to "the Public Justice Foundation, a non-sectarian, not-for-profit organization dedicated to, among other things, investor education and advocacy." *In re Stable Rd. Acquisition Corp. Sec. Litig.*, 2025 WL 924928, at *4 (C.D. Cal. Mar. 24, 2025); *In re Loop Industries, Inc. Sec. Litig.*, 2023 WL 6458976, at *2 (S.D.N.Y. Oct. 4, 2023) (same); *see also* Kimball Decl., ¶44(c); Declaration of Lauren Barnes of the Public Justice Foundation ¶¶2-10 (describing work of the Public Justice Foundation on

behalf of investors); *id.* at ¶¶11-13 (listing securities cases in which the Public Justice Foundation received court approval as the *cy pres* beneficiary).  The proposed U.S. Class Distribution Order filed concurrently herewith confirms the Settlement's provisions for such redistribution of any residue of the U.S. Net Settlement Fund.

## V.      RELEASE OF U.S. CLAIMS

To permit the full and final distribution of the U.S. Net Settlement Fund, it is necessary to bar any further U.S. Claims against the U.S. Net Settlement Fund beyond the amounts allocated to Authorized U.S. Claimants, and to provide that all persons involved in reviewing, verifying, calculating, tabulating, or otherwise processing the submitted U.S. Claims, or in administering or handling the taxation of the U.S. Settlement Fund or U.S. Net Settlement Fund, shall be released and discharged from any and all U.S. Claims arising from such involvement.  Accordingly, U.S. Lead Plaintiff respectfully requests that the Court: (a) release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the U.S. Claims submitted in connection with the U.S. Settlement, or who are otherwise involved in the administration or taxation of the U.S. Settlement Fund or the U.S. Net Settlement Fund, from any and all claims arising out of that involvement; and (b) bar all U.S. Settlement Class Members and other U.S. Claimants, whether or not they receive payment from the U.S. Net Settlement Fund, from making any further claims against the U.S. Net Settlement Fund, U.S. Lead Plaintiff, U.S. Lead Counsel, U.S. Plaintiff's Counsel, the U.S. Claims Administrator, the U.S. Escrow Agent or any other agent retained by U.S. Lead Plaintiff or U.S. Lead Counsel in connection with the administration or taxation of the U.S. Settlement Fund or the U.S. Net Settlement Fund, or any other person released under the U.S. Settlement beyond the amounts allocated to them pursuant to

the terms of the U.S. Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the U.S. Judgment, and the U.S. Class Distribution Order.

Courts have repeatedly approved similar provisions in connection with the distribution of settlement proceeds. *See*, *e.g., Wilson v. LSB Indus., Inc*., 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the U.S. Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the U.S. Net Settlement Fund, are released and discharged from any and all U.S. Claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the U.S. Net Settlement Fund, are barred from making any further claim against the U.S. Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."); *In re Qudian Inc. Sec. Litig.*, 2022 WL 633863, at *2 (S.D.N.Y. Mar. 4, 2022) (approving substantially similar language in order authorizing distribution of settlement proceeds); *Stein v. Eagle Bancorp, Inc.*, 2022 WL 4245185, at *2 (S.D.N.Y. Sept. 15, 2022) (same); *In re Eletrobras Sec. Litig.*, 467 F. Supp. 3d 149, 151 (S.D.N.Y. 2020) (same); *In re Patriot Nat'l, Inc. Sec. Litig.*, 2021 WL 1040462, at *2 (S.D.N.Y. Mar. 18, 2021) (same); *In re Merrill Lynch & Co., Inc. Sec., Derivative and ERISA Litig.*, 2010 WL 11595033, at *2 (S.D.N.Y. Dec. 23, 2010) (same).

## VI.   THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES

The cost of the administration for this project up to the Initial U.S. Distribution is $101,079.82 USD, all of which has been paid. Kimball Decl. ¶43. The estimate to conduct the Initial U.S. Distribution is no more than $9,000 USD. *Id.*; Ex. E. Therefore, U.S. Lead Counsel respectfully requests that the Court authorize payment to the U.S. Claims Administrator from the

11

Settlement Fund of $9,000 USD, in anticipation of the work to be performed during the Initial U.S. Distribution.[5] *Id.*

## VII.   RECORDS RETENTION AND DESTRUCTION

U.S. Lead Plaintiff respectfully requests the Court order that: (i) no earlier than one (1) year after the Initial U.S. Distribution, or the Second U.S. Distribution of the U.S. Net Settlement Fund, if that occurs, the U.S. Claims Administrator may destroy the paper copies of the U.S. Claims and all supporting documentation; and (ii) no earlier than one (1) year after all funds have been distributed, the U.S. Claims Administrator may destroy the electronic copies of the U.S. Claims and all supporting documentation. *Id.* ¶44(d).

## VIII.   CONCLUSION

For all of the above reasons, U.S. Lead Plaintiff respectfully requests that the Motion be granted.

Dated: January 21, 2026                     **GLANCY PRONGAY & MURRAY LLP**

By: */s/ Garth A. Spencer*
Joseph D. Cohen (*pro hac vice*)
Ex Kano S. Sams II (*pro hac vice*)
Garth A. Spencer (GS-0298)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
jcohen@glancylaw.com
esams@glancylaw.com
gspencer@glancylaw.com

---

[5] If the anticipated fees and expenses to conduct the Initial U.S. Distribution are greater than the actual cost to conduct the distribution, the excess will be returned to the U.S. Net Settlement Fund. Kimball Decl. ¶43.

Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
glinkh@glancylaw.com

*Counsel for U.S. Lead Plaintiff Robert Partovy and
the U.S. Settlement Class*

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of January, 2026, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Garth Spencer*
Garth Spencer